[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11750
_____

D.C. Docket No. 8:13-cv-00478-JSM-MAP


REGINA WHITE,

Plaintiff-Appellant,

versus

BELTRAM EDGE TOOL SUPPLY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 12, 2015)

Before MARTIN and ROSENBAUM, Circuit Judges, and COOGLER,[*] District
Judge.

MARTIN, Circuit Judge:

_____

[*] Honorable L. Scott Coogler, United States District Judge for the Northern District of
Alabama, sitting by designation.

This appeal presents several questions about the proper application of the Family and Medical Leave Act of 1993.  Regena White[1] sued her former employer, Beltram Edge Tool Supply, Inc., claiming that it interfered with her rights under the FMLA by firing her instead of giving her medical leave.  The District Court granted summary judgment for Beltram, finding that Ms. White's interference claim failed as a matter of law.  The Court also declined to consider two alternative causes of action because Ms. White had not stated them in her complaint.  After the benefit of oral argument, we conclude that the District Court erred by dismissing Ms. White's interference claim and by declining to consider one of her two alternative causes of action.  We affirm in part and reverse in part.

This opinion proceeds in four Parts: Part I outlines the general legal background; Part II discusses the facts relevant to Ms. White's appeal; Part III analyzes the legal questions relevant to Ms. White's interference claim; and Part IV considers the two alternative causes of action dismissed by the District Court.

## I.    <u>Legal Background</u>

The Family and Medical Leave Act confers several rights on employees, including two relevant here: the right to take twelve weeks of job leave "[b]ecause of a serious health condition that makes the employee unable to perform the

---

[1] Ms. White's first name has been spelled at various points in this case as "Regina" and "Regena."  Because she refers to herself as "Regena" in her brief on appeal, we adopt her spelling despite our caption.

functions" of her job, 29 U.S.C. § 2612(a)(1), (a)(1)(D); and the right to be reinstated to her original job (or an equivalent) after FMLA leave, id. § 2614(a)(1).

To protect these rights, the FMLA creates a private right of action. If an employer interferes with an employee's FMLA rights, she may sue for equitable relief or money damages. Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006). This archetypal FMLA claim is often called an "interference claim," because the "employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under" the FMLA. Id. (emphasis added) (quotation omitted). An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010).[2]

The first element is the crux of this appeal. There is no dispute about the second. Beltram clearly denied Ms. White two FMLA benefits when it fired her: it denied her FMLA leave, see § 2612, and it refused to reinstate her, see § 2614. But the District Court held on summary judgment that Ms. White had not shown that she was entitled to FMLA leave in the first place, so her interference claim failed. It granted summary judgment for Beltram. We conclude that summary judgment was not appropriately granted.

---

[2] An employer may be liable for interference despite good intentions; its "motives are irrelevant." Krutzig, 602 F.3d at 1235 (quotation omitted).

3

## II.    Facts & Procedural History

On summary judgment, we "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion," here, Ms. White.  See Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774 (2007) (quotations omitted) (alteration adopted).

Ms. White's need for FMLA leave was based on an injury to her knee.  She first injured her knee in April 2010, about ten months before she requested FMLA leave.  At the time, an orthopedist prescribed physical therapy and told her she may need surgery if her knee remained unstable.  She was able to work for nearly the rest of 2010 despite her knee injury.  Ms. White stopped reporting for work on December 23, but her absences were due to other health issues.  She called in to Beltram over the next few weeks and explained that she was absent because she was suffering from various maladies: bronchitis, sleep apnea, hypertension, shortness of breath, chest pain, and anxiety.

On January 27, 2011, still absent from work, Ms. White visited her primary care physician and reported that she had fallen twice the previous weekend, reinjuring the same knee.  This reinjury and the necessary treatment formed the basis of her need for FMLA leave.[3]

---

[3] In her complaint, Ms. White said that her need for FMLA leave began in December 2010, apparently referring to her health issues unrelated to her knee.  But the District Court held,

The day after reinjuring her knee, January 28, Ms. White spoke with two Beltram supervisors. She told Jim Reeverts, her direct supervisor, that her "knee gave out and it was painful and [she] could put [sic] any weight on it and received a referral from [her primary care physician] to go to an orthopedic physician."[4] She also spoke with Xiomara Polewaski, Beltram's Executive Vice President of Operations, and asked for FMLA paperwork. Ms. Polewaski sent Ms. White a physician's certification form and told her that it was due fifteen days later, on February 12. See 29 C.F.R. § 825.305(b) (requiring an employee seeking FMLA leave to give certification of her medical condition "to the employer within 15 calendar days after the employer's request, unless it is not practicable . . . to do so" or "the employer provides more than 15 calendar days").

On February 8, Ms. White saw her orthopedist and signed a consent form for a knee operation. But she was not able to complete the FMLA paperwork on that day because her orthopedist was himself taking a leave of absence, and she was transferred to another doctor. On February 11, one day before the stated deadline for returning the FMLA paperwork to Beltram, Ms. White contacted Ms.

and Ms. White admits on appeal, that her claims are not based on those earlier health issues. See Oral Argument at 10:02, White v. Beltram, No. 14-11750 (11th Cir. May 13, 2015).

[4] Although Mr. Reeverts testified that he did not recall Ms. White mentioning her knee, he said he remembered her saying she was planning to visit specialists. On summary judgment, to the extent there is a dispute about whether Ms. White told Mr. Reeverts about her knee injury, we accept her testimony.

Polewaski, explained the situation involving the orthopedists, and asked for an extension of the fifteen-day deadline. Ms. Polewaski testified that Ms. White said the FMLA certification would be a couple of days late, so she "grant[ed] [Ms. White] a couple of extra days . . . and . . . told her to get the form [in] as soon as possible." Ms. Polewaski did not give a specific due date.

At the same time, Ms. Polewaski told Ms. White to send doctor's notes explaining her absences since December 27. Ms. White responded by sending two doctors' notes. On one, completed on January 18, Ms. White's doctor wrote that she was "under [the doctor's] care from 12-28-10 to 1-24-11." The second note, completed on January 24, indicated that Ms. White would "be able to return to [work] on 1-31-11."

On February 17, shortly after receiving the two doctor's notes, Beltram fired Ms. White.[5] Ms. Polewaski, who, along with her supervisor, decided to fire Ms. White, said she was "shocked" because the doctor's notes appeared to show Ms. White was cleared to return to work on January 31, but Ms. White had not returned nearly two weeks later and gave no explanation for her continued absence. Ms. Polewaski testified that when the decision was made to fire Ms. White, she still

---

[5] Beltram insists that it made the decision to fire Ms. White on February 16, not February 17. But Ms. White points out evidence to the contrary. For example, Beltram's termination report indicates that the effective date of Ms. White's termination was February 17, and Beltram's human resources director wrote in a letter to the state and testified under oath in an unemployment hearing that Ms. White was terminated on February 17. Because we accept Ms. White's version of the facts when considering Beltram's motion for summary judgment, we proceed on the understanding that Ms. White was terminated on February 17.

had not received Ms. White's FMLA paperwork, which she had expected by February 15. But according to Ms. White, she faxed the FMLA form to Beltram on February 16. The form indicated that Ms. White's knee injury, the planned surgery, and post-operative rehabilitation would make her unable to perform her job from January 28 to April 28—a period of almost thirteen weeks.

A letter sent to Ms. White explained why she was fired. It said her doctor's notes indicated she was "able to return to work, without restrictions, on January 31, 2011[,] but . . . never did return to work." It went on: "Additionally, you have failed to return, within the 15 calendar days granted by law, the FMLA form that was e-mailed to you on January 28, 2011." Ms. Polewaski explained to Ms. White by phone that she was fired because Beltram "made a business decision . . . because [it] did not receive [her] paperwork."

Ms. White underwent knee surgery on March 7. About a year later, on March 30, 2012, her surgeon signed a letter stating that Ms. White recovered "extremely well" from her surgery and could have returned to work on March 28, 2011—nearly a month earlier than the original estimate, and well within the twelve weeks guaranteed by the FMLA.

Ms. White filed suit against Beltram in state court in January 2013. Beltram removed the case to the District Court for the Middle District of Florida, and moved for summary judgment. The District Court granted summary judgment for

7

Beltram.  In its order, the District Court held that Ms. White had failed to create a genuine dispute of fact showing that she was entitled to leave, so her claim that Beltram interfered with her FMLA rights failed as a matter of law.

The District Court ruled that Ms. White was not entitled to FMLA leave—and thus could not show the first element of an interference claim—for three reasons: she did not suffer from a serious health condition; she did not give proper notice of her need for FMLA leave; and she requested more than twelve weeks of leave.  In addition to dismissing her interference claim, the District Court also declined to consider two alternative causes of action advanced by Ms. White for the first time on summary judgment: that Beltram failed to comply with FMLA's employer-notice requirements, and that Beltram retaliated against her for exercising her rights under the FMLA.  The District Court explained that Ms. White had not pleaded these two claims in her complaint and could not raise them for the first time at summary judgment.  Ms. White appeals each of these rulings.

We review de novo the District Court's grant of summary judgment.  Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014) (per curiam).  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### III.    Interference Claim

Viewing the evidence in the light most favorable to Ms. White, we cannot agree with the District Court that Beltram was entitled to summary judgment on Ms. White's interference claim. This Part, consisting of four Sections, explains how we part ways with the District Court. We decide that there are disputes of fact about whether (III.A) Ms. White suffered from a serious health condition; (III.B) she gave proper notice to Beltram of her need for FMLA leave; and (III.C) her doctor's initial estimate that she would need more than twelve weeks of leave disqualified her from FMLA leave. We also (III.D) cannot affirm the District Court's dismissal of Ms. White's interference claim on a separate ground not relied upon below.

### A.    Serious Health Condition

An employee has the right to take FMLA leave only if she suffers from a "serious health condition" that makes her "unable to perform the functions of [her] position." Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166 (11th Cir. 2014) (quotation omitted). The District Court first held that Ms. White was not entitled to FMLA leave "because she did not suffer from a serious health condition" at any point during her absence from Beltram. That was error because there is at least a dispute of fact on the point.

9

A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves," as relevant here, "continuing treatment by a health care provider."  29 U.S.C. § 2611(11), (11)(B).  Continuing treatment by a health care provider is "[a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition."  29 C.F.R. § 825.115(a) (also requiring actual treatment by a health care provider).[6]  "[I]ncapacity" means the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."  Id. § 825.113(b).

The District Court held that Ms. White's knee injury was not a serious health condition.  But in doing so, it failed to view the relevant facts in the light most favorable to Ms. White.  The FMLA certification form completed by Ms. White's orthopedist stated quite clearly that her injury qualified as a serious health condition under the Act's definition.  The form asked: "Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery?"  The doctor checked "Yes."  The form also asked the doctor to "estimate the beginning and ending dates for the period of incapacity."  The doctor wrote: "1/28/11-4/28/11."  On its face, the certification form indicated that Ms. White's knee injury was a "serious health

---

[6] We have afforded deference to this regulation.  See Russell v. N. Broward Hosp., 346 F.3d 1335, 1345 (11th Cir. 2003).

10

condition" involving "continuing treatment," because the doctor certified that Ms. White would be incapacitated for more than three days.  See § 825.115(a).

Our review of the record shows that the District Court limited its consideration to only the evidence Ms. White gave to Beltram before she was fired. It wrote: "White's medical records presented to Beltram from December 27, 2010, through her date of termination also reflect that White was not incapacitated for purposes of 'continuing treatment.'" (Emphasis added.)  But we know of no authority, and neither the District Court nor Beltram has identified any, suggesting that, to determine whether an employee had a "serious health condition," a court must limit itself to considering only evidence received by the employer before the employee was fired.  And we see no reason why that should be the case.  The fact question—did an employee suffer from a serious health condition?—is one that, like any other question on summary judgment, should be answered using all available evidence.

It may at first seem unfair to the employer, as Beltram argues, to make the serious-health-condition determination using evidence that the employer did not see until after it made the termination decision.  But, as we discuss later, other provisions in the FMLA protect employers from being sandbagged by employees who try to create interference claims after the fact and based on information not known at the time of termination.  For example, the Act requires employees to

11

timely notify employers of their need for FMLA leave, see § 2612(e)(2)(B), and to provide prompt certification from their doctors, see id. § 2613(a).

The date on which Ms. White gave medical evidence to Beltram has no bearing on whether, as a factual matter, she had a serious health condition. The timeliness of her notice and certification may affect whether she met her obligations under the Act, as we discuss in Sections III.B and D, infra. But the timeliness of her notice and certification don't decide the question of whether she suffered from a serious health condition. We conclude that the District Court erred by holding that Ms. White did not suffer from a serious health condition. She did, at least for the purpose of Beltram's motion for summary judgment. Her interference claim therefore does not fail based on her lack of a serious health condition. But this does not end our analysis.

**B.    Notice of Need for FMLA Leave**

While suffering from a serious health condition is necessary, it is not sufficient for an employee to earn FMLA leave. She must also give her employer notice of her need for leave, see § 2612(e), and she can state an interference claim only if she gave proper notice, Hurley, 746 F.3d at 1167. After finding that Ms. White did not suffer from a serious health condition, the District Court alternatively held that she failed to give proper notice to Beltram, thus creating

another barrier to her interference claim.  On this issue too, we come to a different conclusion.

The District Court predicated this holding on its finding that Ms. White's need for leave was foreseeable.  This issue of foreseeability is crucial, because the FMLA's notice requirements are considerably more onerous if an employee's need for leave is foreseeable than if it is unforeseeable.  Once it found Ms. White's need for leave to be foreseeable, the District Court held that her notice did not meet the requirements for foreseeable leave.  Our conclusion is to the contrary: her need for leave was unforeseeable, and her notice was adequate under the less stringent requirements governing notice for unforeseeable leave.

1.    FMLA's Notice Requirements

An employee's notice of her need for FMLA leave must satisfy two criteria—timing and content—both of which differ depending on whether the need for leave is foreseeable or unforeseeable.  *First*, timing.  If an employee's need for leave is foreseeable, she must give her employer at least 30 days' advance notice, unless giving 30 days' notice is impracticable, in which case the employee must give only "such notice as is practicable."  § 2612(e)(2); see also 29 C.F.R. § 825.302(a).  If, on the other hand, an employee's need for leave is unforeseeable, the 30-day requirement "does not apply."  Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1208 (11th Cir. 2001).  Again a practical

13

standard applies: "an employee [whose need for leave is unforeseeable] must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).

*Second*, content.  As a general rule, an employee need not explicitly mention the FMLA when giving notice to her employer.  See Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1383 (11th Cir. 2005) ("An employee is not required to assert expressly her right to take leave under the FMLA.").  But the FMLA and its regulations do require that the notice convey certain information.  Again, the content requirement differs depending on whether an employee's need for leave is foreseeable or unforeseeable.  If the need for leave is foreseeable, an employee must give her employer notice that is "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and [of] the anticipated timing and duration of the leave."  § 825.302(c).  If the need for leave is unforeseeable, an employee need only "provide sufficient information for [her] employer to reasonably determine whether the FMLA may apply to the leave request." § 825.303(b).

2.    Ms. White's Need for Leave Was Unforeseeable

Our task is made more difficult because neither the FMLA nor its implementing regulations defines the terms "foreseeable" and "unforeseeable."

14

We must divine, with little textual or precedential guidance, whether Ms. White's need for leave was foreseeable or unforeseeable.

Courts usually speak in terms of whether the need for leave itself was foreseeable. See, e.g., Hurley, 746 F.3d at 1167 ("[A]n employee is required to provide notice when the need for leave is foreseeable." (emphasis added)); Cruz, 428 F.3d at 1382 ("The FMLA requires employees to provide 30 days advance notice of the leave, when the need to take leave is foreseeable. . . . [I]f the need for leave is not foreseeable . . . ." (emphasis added)). But the FMLA itself is a bit more specific: it requires 30 days' advance notice if the need for leave is "foreseeable based on planned medical treatment." § 2612(e)(2) (emphasis added); see also § 825.302(a) (same); cf. § 2612(e)(2)(B) (requiring only "such notice as is practicable" if the "date [of the employee's] treatment requires leave to begin in less than 30 days" (emphasis added)). This gives us a clue: an employee's need for leave is foreseeable if it is based on planned medical treatment. The question— was Ms. White's need for leave foreseeable?—can be reframed as follows: was Ms. White's knee surgery a planned medical treatment?

The District Court found Ms. White's need for leave to be foreseeable. While it did not expressly mention "planned medical treatment," its finding appears to be based, at least implicitly, on a belief that her knee surgery was that kind of treatment. The Court explained that Ms. White "knew as far back as April

2010, when she first injured her knee, that surgery was an option." It pointed to the testimony of the orthopedist who performed her knee surgery: "Dr. Okun testified that White's surgery 'was something that could be scheduled in advance and planned for.' Indeed, he testified that the surgery was 'elective.'"

But the District Court did not view the evidence in the light most favorable to Ms. White. When she first injured her knee, her doctor prescribed physical therapy and discussed surgery only as an eventuality. And she was able to work for eight months despite the initial injury. While it is true that she knew surgery was "an option" in April 2010, viewing the facts in her favor compels the conclusion that she had no intention (or need) to undergo surgery until she reinjured her knee in January 2011.

It is also true that Dr. Okun responded affirmatively when asked whether the knee surgery was "something that could be scheduled in advance and planned for." But his response was not a simple "yes"; he said: "Yes. It [the surgery] was elective." And just a few questions later, he gave a fuller explanation of the term "elective," and the general nature of Ms. White's knee surgery:

> It's . . . elective in that it doesn't have to be done right away in the middle of the night. That's an orthopedic emergency. It's a relatively urgent procedure, because if it's—something isn't done[,] the knee is going to keep buckling out and giving out . . . , but it's not a true emergency where you're going to lose your leg if it isn't done right away.

16

(Emphasis added.)  Dr. Okun testified that the surgery was "elective" only in the sense that it would not result in amputation if not performed immediately.  His testimony indicates that the surgery was "relatively urgent," and that Ms. White's knee would "keep buckling and giving out" until she had surgery.  When viewed in the light most favorable to Ms. White, this surgery was not a "planned medical treatment."  Her need for leave was thus unforeseeable, and she was not required to give 30 days' advance notice.[7]

### 3.    Ms. White's Notice Was Adequate

Because Ms. White's need for leave was unforeseeable, she was required to give notice only as early as was practicable, § 825.303(a), and her notice had to contain only "sufficient information for [Beltram] to reasonably determine whether the FMLA may apply to the leave request," id. § 825.303(b).  She did, and it did.

Ms. White fell and reinjured her knee around January 26, 2011.  The very next day she spoke to her direct supervisor and told him that she injured her knee, she could not put any weight on it, and that she had made an appointment to see an orthopedic surgeon.

---

[7] In the alternative, even if the surgery could have been planned in advance, Ms. White's reinjury of her knee would certainly qualify as a "change in circumstances" that exempted her from the 30-day notice requirement altogether.  See § 825.302(a) ("If 30 days notice is not practicable, such as because of . . . a change in circumstances, or a medical emergency, notice must be given as soon as practicable." (emphasis added)).  Giving notice (to Mr. Reeverts) only one day after the reinjury—that is, one day after the "change in circumstances"—is well within the realm of giving notice "as soon as practicable."

This satisfies the FMLA's two notice criteria. Giving notice the very next day assuredly meets the timing standard of practicability. And the content of Ms. White's notice was also sufficient. She told her direct supervisor that her knee "gave out," that it "was painful," that she "could [not] put any weight on it," and that she had received a referral to an orthopedic surgeon. That is plenty of information for an employer to reasonably determine whether Ms. White may have needed FMLA leave due to a serious medical condition. For purposes of Beltram's motion for summary judgment, Ms. White's notice was sufficient and did not disqualify her from taking FMLA leave.

## C.    **Estimating More than Twelve Weeks of Leave**

The FMLA gives employees the right to be reinstated to their original job (or an equivalent) after returning from FMLA leave. § 2614(a)(1). But the FMLA guarantees only twelve weeks of leave, § 2612(a)(1), and if after twelve weeks the employee cannot perform an essential job function, she is not entitled to reinstatement, 29 C.F.R. § 825.216(c).

The District Court held that even if Ms. White was entitled to FMLA leave—even if she had a serious health condition and gave adequate notice—she was not entitled to be reinstated to her job because she requested more than the twelve weeks of leave guaranteed by the FMLA. The Court observed that Ms. White's FMLA certification form "identified [her] period of incapacity as lasting

18

from January 28, 2011, to April 28, 2011, a period of nearly thirteen weeks." The Court held that this certification form disqualified Ms. White from restoration. If she was not entitled to job restoration, then Beltram did not interfere with her FMLA rights by firing her. Once more, we come to a different conclusion.

The District Court was correct as a legal matter that an employee who cannot perform after twelve weeks of FMLA leave is not entitled to be restored to her job. See § 825.216(c). And it is also true that Ms. White's doctor's certification form indicated a disability lasting (slightly) longer than twelve weeks. But we see two problems with the District Court's reliance on that form as justification for Beltram's decision to fire Ms. White. First, as a factual matter Beltram itself insists that it decided to fire Ms. White before it received the certification form. It says it made the decision to fire Ms. White on February 16 and got the form on February 18.

Second, and perhaps more importantly, that form was only an estimate of the length of Ms. White's leave. See § 2613(b)(2) (providing that an employee must give her employer certification only of "the probable duration of the condition" necessitating leave (emphasis added)). And Ms. White points to contradictory evidence tending to show that she actually could have returned to her job in fewer than twelve weeks. About a year after her surgery, her orthopedic surgeon signed a form that retroactively cleared her to return to work on March 28, 2011—only

19

eight weeks after the beginning of her requested leave period—because she "did extremely well in the immediate postoperative period."[8]  These competing pieces of evidence create a dispute as to whether Ms. White could have returned to work within twelve weeks.  The District Court erred by resolving this dispute in favor of Beltram.

*    *    *

The District Court held that Ms. White's interference claim failed as a matter of law because she was not entitled to FMLA leave.  It gave three reasons why she was not entitled to leave: she did not suffer from a serious health condition, she did not give proper notice of her need for leave, and she requested more than twelve weeks of leave.  At least when considering Beltram's motion for summary judgment, we come out differently for all three.  None of these three reasons disqualifies Ms. White from taking FMLA leave.

## D.    Timely Return of Physician's Certification

Nevertheless, Beltram asks us to affirm the District Court's dismissal of Ms. White's interference claim on a fourth ground that was not decided below: that Ms.

---

[8] Beltram strenuously objects to the use of this letter.  It is true that the letter is not based on an in-person exam, is self-serving, uncorroborated, and gives clearance only retroactively.  But it contradicts her physician's certification, which in any event, as just discussed, gave only an estimate of how long she would be incapacitated—an estimate made before she underwent surgery.  Even the one case Beltram cites in support of this position actually undermines it.  In Edgar v. JAC Products, Inc., 443 F.3d 501 (6th Cir. 2006), the Sixth Circuit instructed district courts to "consider all of the medical evidence bearing on the employee's ability to timely return, not just the evidence available at the time of the adverse employment action."  Id. at 512 (emphasis added).

White did not timely return the physician's certification form within 15 days, as required by the FMLA. See § 825.305(b). We decline to do so because there is a dispute of fact about whether Beltram granted her an extension beyond 15 days. See id. (providing that an employee must return the certification form within 15 days "unless . . . the employer provides more than 15 calendar days to return the requested certification").

On February 11, one day before the initial 15-day deadline, Ms. White called in to Beltram and told Ms. Polewaski that she needed extra time to complete the certification form. She told Ms. Polewaski that her orthopedist, who she had asked to complete the form, was taking a leave of absence. She told Ms. Polewaski that she was seeing another orthopedist on February 15. In response, Ms. Polewaski told Ms. White "to get the form [to her] as soon as possible." (Emphasis added.) Viewing this conversation in the light most favorable to Ms. White, a reasonable jury could find that the vague response by Ms. Polewaski—get it in as soon as possible—implied an extension based on the February 15 appointment date. That is to say, a reasonable jury could find that Ms. Polewaski gave her assent to Ms. White to return the certification on February 16, a mere one day after Ms. White's appointment with her orthopedist. [9]

---

[9] As with the timeliness of Ms. White's notice, see supra note 7, we alternatively hold that it was impracticable for Ms. White to return the physician's certification form within 15 days. The regulations provide that certification can still be timely, even if returned after the

We must reverse the District Court's grant of summary judgment for Beltram and remand Ms. White's interference claim for further proceedings.

## IV.     Unpleaded Claims

Finally, the District Court declined to consider two additional causes of action alleging independent violations of the FMLA by Beltram: failure to give proper notice to employees about their rights and obligations under the FMLA,[10] and retaliation against Ms. White for exercising her FMLA rights.[11]  The District

---

usual 15-day deadline, if "it is not practicable under the particular circumstances . . . despite the employee's diligent, good faith efforts."  § 825.305(b).  Ms. White visited her orthopedist on February 8—well within the 15-day deadline.  She gave the FMLA certification form to her doctor and said she needed it within two to three days so she could return it to Beltram.  However, the orthopedist's office called her on February 11—just one day before the 15-day deadline—and told her that her orthopedist was going on medical leave and she would have to see another doctor.  She scheduled an appointment for February 15, called Ms. Polewaski and apprised her of the situation, and returned the form only one day after her February 15 appointment.  For purposes of Beltram's motion for summary judgment only, we conclude that the delay was beyond Ms. White's control, and she acted with diligence to return the certification form as quickly as possible.  She thus satisfied the regulation's impracticability standard.

[10] An employer-notice cause of action alleges that an employer failed to comply with one or more of various regulations requiring notice to its employees about their rights and obligations under the FMLA.  See 29 C.F.R. § 825.300(a)(1) (employer must post a conspicuous and prominent notice explaining the FMLA's provisions and procedures); id. § 825.300(a)(3) (employer should include notice about FMLA rights in an employee handbook or other written materials distributed to new employees); id. § 825.300(b)(1) (employer must give employee notice of her FMLA eligibility within five days of learning that she may be entitled to FMLA leave); id. § 825.300(c)(1) (employer must notify employee of the "specific expectations and obligations of the employee" related to FMLA leave and the consequences of failing to satisfy those expectations and obligations); see also id. § 825.300(e) (providing that an employer's failure to satisfy the FMLA's notice requirements gives rise to an interference claim).

[11] A retaliation cause of action alleges that the "employer discriminated against [the employee] because [s]he engaged in an activity protected by the [FMLA]."  Pereda v. Brookdale Senior Living Cmtys., Inc., 666 F.3d 1269, 1272 (11th Cir. 2012).  An employee must show "that (1) [she] engaged in statutorily protected conduct, (2) [she] suffered an adverse

22

Court held that Ms. White had not stated these causes of action in her complaint and advanced them for the first time on summary judgment. Based on its view that her complaint did not apprise Beltram that she intended to pursue these theories of liability, and because she did not move to amend her complaint to add those theories, the Court concluded that she could not raise them for the first time on summary judgment. The District Court properly dismissed the first cause of action, but dismissing the second was error.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Despite the "liberal pleading standard for civil complaints," plaintiffs may not "raise new claims at the summary judgment stage." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint . . . ." Id. at 1315. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Id.

Ms. White's complaint was a short three pages. It did not explicitly state an "employer-notice" claim, or a "retaliation" claim, or, for that matter, even an "interference" claim. It stated only one count, which was labeled "Violation of the

employment action, and (3) there is a causal connection between the two." Krutzig, 602 F.3d at 1234.

23

Family and Medical Leave Act."  In total, the count's two substantive paragraphs read as follows:

> 11. Defendant violated the Family and Medical Leave Act by refusing to designate leave as FMLA protected leave and terminating [Plaintiff] for taking leave, thereby failing to provide reinstatement under the FMLA.

> 12. The actions of Defendant were willful.

The half-page fact section contained no information about the notice given by Beltram to its employees.  Again, in full, it reads as follows:

> 8. In December 2010, Plaintiff was diagnosed with a serious medical condition which required her to undergo surgery and caused her to be absent from work.

> 9. Plaintiff specifically informed her supervisors of the specific nature of the condition, that it required surgery, and that should [sic] would be absent from work due to the surgery.

> 10. On February 17, 2011, she was terminated for unexcused absences.

The District Court was correct to hold that there was no basis for Beltram to have understood from the complaint that Ms. White was alleging an employer-notice cause of action—i.e., that it failed to give notice to its employees about the FMLA as required under the Act.  Ms. White's complaint contains no mention of the notice (or lack thereof) given by Beltram to its employees, or the FMLA's employer-notice requirements.  But her allegation that Beltram "terminat[ed] her for taking leave" put Beltram on notice that she was stating a retaliation cause of

24

action.  Ms. White's retaliation claim must return to the District Court for

consideration alongside her interference claim.

**AFFIRMED IN PART**, **REVERSED IN PART, and REMANDED**.