[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11671
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-01843-KOB

ERIC BROWN,

Plaintiff - Appellant,

versus

JEFFERSON COUNTY SHERIFF'S DEPARTMENT, et al.,

Defendants,

MARK PETTWAY,
in his official capacity as Sheriff of Jefferson County, Alabama,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 13, 2020)

Before WILLIAM PRYOR, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Eric Brown, a deputy sheriff with the Jefferson County Sheriff's Office ("Sheriff's Office"), appeals the district court's grant of summary judgment in favor of Mark Pettway, the Sheriff of Jefferson County ("Sheriff"), on his claim of race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").[1]  After careful review, we affirm the district court.

## I.

Brown, an African-American man, has worked as a deputy sheriff for the Sheriff's Office since 2002.  He was in the patrol division at the time of the events relevant to this case.

In 2013, Brown, along with several other parties, purchased a 1969 Chevrolet Camaro for nearly $80,000.  Brown also signed a purchase agreement for a 1967 Ford Mustang for $43,000.

Drug Enforcement Agency ("DEA") agents seized both cars in October 2013.  The government then filed a civil forfeiture action in April 2014, alleging that the cars were used to launder illicit drug money.  The DEA publicly identified Brown as a deputy sheriff under investigation for drug-related money-laundering crimes.

On the same day as the DEA's public announcement of its active investigation, April 10, 2014, the Sheriff placed Brown on administrative leave with

---

[1] Brown also alleged a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA").  The district court dismissed the ADEA claim on May 5, 2017, and Brown does not challenge that ruling on appeal.

2

pay.  On June 12, 2014, with the DEA investigation still ongoing, the Sheriff placed Brown on administrative leave without pay.  Brown remained on administrative leave without pay until June 11, 2015.  Personnel rules prohibited the Sheriff from keeping Brown on administrative leave without pay for longer than one year.

Brown returned to work on June 12, 2015, with the DEA investigation still ongoing.  Upon his return, the Sheriff involuntarily transferred Brown from the patrol division to the corrections division and placed him under several administrative restrictions.  He was not permitted to take a patrol car home, to wear a uniform outside the correctional facility, or to make any arrests or perform any duties outside the correctional facility.

The Sheriff claimed that he transferred Brown and placed him under administrative restrictions because he "was concerned that the on-ongoing federal investigation and on-going civil forfeiture action . . . would taint any arrest Deputy Brown had to make and any testimony he had to give concerning such an arrest." Randy Christian, the Chief Deputy, submitted an affidavit elaborating that the patrol division involved making arrests and having to testify in court, which could be tainted by the unresolved federal proceedings.  Likewise, if Brown were driving a police vehicle or wearing his uniform outside the jail, according to Christian, the public would expect him to potentially make an arrest, and, again, the unresolved federal proceedings could taint the arrest and any testimony.

3

Once the federal investigations ended, the Sheriff lifted the administrative restrictions and permitted Brown to transfer to the patrol division at the next opening.

After receiving his right-to-sue letter, Brown filed a counseled federal lawsuit in November 2016 under Title VII.  In Count One of the operative amended complaint, he alleged that "[o]n June 11, 2015, Defendant discriminated against Plaintiff . . . [because of his race] when Defendant involuntarily reassigned the Plaintiff to the Corrections Division with restrictions."  He did not identify any other alleged discriminatory conduct in Count One.

The Sheriff filed a motion for summary judgment, which the district court granted.  In relevant part, the district court concluded that (a) Brown's case was limited to his involuntary transfer and administrative restrictions, despite his efforts at summary judgment to challenge his placement on administrative leave; (b) the administrative restrictions, but not the involuntary transfer, constituted an "adverse employment action" that was actionable under Title VII; and (c) the Sheriff's proffered reason for imposing the administrative restrictions was not pretextual. Brown now appeals, challenging each of these conclusions.

## II.

We first address the district court's decision to limit Brown's claim to his involuntary transfer and administrative restrictions.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

Fed. R. Civ. P. 8(a), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted).

"Despite the liberal pleading standard for civil complaints, plaintiffs may not raise new claims at the summary judgment stage." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) (quotation marks omitted). The proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15, Fed. R. Civ. P. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Id.*

Here, the district court properly refused to consider any claim based on Brown's placement on administrative leave. Although the amended complaint contains facts relating to administrative leave, they were not incorporated in Count One, which alleged race discrimination. The only discriminatory conduct alleged in Count One took place "[o]n June 11, 2015, . . . when Defendant involuntarily reassigned the Plaintiff to the Corrections Division with restrictions." As a result, Brown's complaint failed to provide fair notice to the Sheriff that Brown intended to challenge any other conduct as discriminatory. Moreover, Brown did not seek to amend the complaint and instead raised the new claim in opposition to summary judgment. Because "plaintiffs may not raise new claims at the summary judgment

5

stage," *White*, 789 F.3d at 1200, the district court properly declined to consider Brown's new claim based on his placement on administrative leave.

## III.

We next consider whether the district court erred in granting summary judgment to the Sheriff. We review that decision *de novo*, viewing the record and drawing all reasonable inferences in favor of the nonmoving party. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court's function at summary judgment is to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment should not be granted if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. But if the evidence presented by the nonmoving party is "merely colorable" or not "significantly probative," summary judgment may be granted. *Id.* at 249–50; *see Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice.").

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [his] race." 42 U.S.C. § 2000e-2(a)(1). In evaluating

6

claims under Title VII, we generally apply the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which the plaintiff must first establish a *prima facie* case of discrimination.[2]  *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 (11th Cir. 2019) (*en banc*).

To establish a *prima facie* case, the plaintiff must show: (1) he was a member of a protected group; (2) he was qualified for the position; (3) he suffered an "adverse employment action"; and (4) the employer treated similarly situated employees outsider his class more favorably.  *Id.* at 1220–21.  If a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action.  *Id.* at 1221.  If the employer meets that burden, the plaintiff then has the "opportunity to demonstrate that the proffered reason was not the true reason for the employment decision," an obligation that "merges with the ultimate burden of persuading the [factfinder] that []he has been the victim of intentional discrimination."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

## A.

Brown disputes the district court's conclusion that his involuntary transfer to the corrections division was not an actionable "adverse employment action."

---

[2] The *McDonnell Douglas* framework is not the only way to prove a claim of discrimination, *see Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019), but the parties present their arguments solely under *McDonnell Douglas*.

"Not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001). "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). The "employee must show a serious and material change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239; *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998) (the plaintiff "must demonstrate that a reasonable person in his position would view the employment action in question as adverse"). "[A] transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000).

Here, the district court did not err when it determined that Brown's transfer to the corrections division was not an adverse employment action because the transfer itself did not result in a "serious and material change in the terms, conditions, or privileges" of his employment. *Davis*, 245 F.3d at 1238. There was no material change in pay. In fact, the evidence showed that Brown earned more salary in corrections than he had in patrol. Brown claims that he lost his seniority for patrol and was required to undergo a month of training once he returned to patrol. But the evidence fails to show with any specificity that a reasonable person in his situation

8

would view these minor consequences as a "serious and material" change in "prestige or responsibility." *See Hinson*, 231 F.3d at 829; *Doe*, 145 F.3d at 1448.

Brown also invokes the administrative restrictions he was placed under, but the district court found that these restrictions were actionable separate from his transfer to corrections. In any case, to the extent that the transfer and restrictions were intertwined, the Sheriff proffered essentially the same legitimate, nondiscrimination reason for both decisions: keeping Brown from having to make an arrest and potentially testify. So even if we assume that the transfer was an adverse employment action, our analysis of that decision will be identical to our analysis of the decision to impose administrative restrictions. For that reason, any error by the district court in concluding that the transfer was not an adverse employment action is harmless. We consider both decisions below.

## B.

Brown maintains that he demonstrated that the Sheriff's proffered reason for transferring him and placing him under administrative restrictions was pretextual by showing "a severe discrepancy between his treatment pending the investigation and that of the white deputy investigated for rape." Brown asserts that the Sheriff's rationale for his transfer and restrictions would also apply to that white deputy, but the deputy was not subject to any restrictions during the investigation.[3]

---

[3] Brown's briefing on appeal does not address any of the other comparators he relied on in

9

A plaintiff may support a showing a pretext with evidence that the employer treated valid comparators outside the plaintiff's protected class better than the plaintiff. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008). A valid comparator must be "similarly situated in all material respects" to the plaintiff. *Lewis*, 918 F.3d at 1224. Ordinarily, a "similarly situated comparator" will "have engaged in the same basic conduct (or misconduct) as the plaintiff"; "have been subject to the same employment policy, guideline, or rule as the plaintiff"'; "ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff"; and "share the plaintiff's employment or disciplinary history." *Id.* at 1227–28. In short, "a valid comparison will turn not on formal labels, but rather on substantive likeness." *Id.* at 1228. Nevertheless, "[a]n employer is well within its rights to accord different treatment to employees who are differently situated in 'material respects.'" *Id.*

Here, Brown failed to show that the Sheriff's proffered non-discriminatory reason for transferring him and placing him under administrative restrictions was not the true reason for those decisions. First, we conclude that the white deputy investigated for rape was not similarly situated in all "material" respects. The record shows that the Sheriff did not place any restrictions on a white deputy while he was

---

the district court, so we conclude that he has abandoned any reliance on these comparators. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (issues not raised on appeal are abandoned).

investigated by an outside law-enforcement agency for a one-month period, after which no charges were brought. In contrast, at the time Brown was transferred and placed under administrative restrictions, the investigation had been ongoing for more than a year with no indication of when or how it would end. And unlike in Brown's situation, there is no evidence that the white deputy was publicly connected to the crime by the investigating agency, let alone a federal agency like the DEA. These differences prevent any meaningful comparison between the treatment of Brown and the white deputy.

Second, even assuming the white deputy was similarly situated, summary judgment was still appropriate because Brown's pretext evidence was not "significantly probative." *Anderson*, 477 U.S. at 249; *see Walker*, 911 F.2d at 1577 ("A mere 'scintilla' of evidence supporting the opposing party's position will not suffice."). Brown does not dispute the district court's statement that the Sheriff "provided three examples of deputies outside Mr. Brown's protected class who received similar or identical administrative restrictions when they were under active investigation, either internally or otherwise." That, in turn, significantly diminishes the probative value of Brown's comparator evidence. And Brown does not identify any other evidence indicating that the Sheriff's explanation of its decisions was untruthful. On the record as a whole, we agree with the district court that no reasonable jury could conclude from the single and aberrant instance of differential

11

treatment that the Sheriff's explanation was unworthy of credence and that Brown's race was the true reason for the conduct. *See Burdine*, 450 U.S. at 256.

For these reasons, we affirm the grant of summary judgment against Brown.

**AFFIRMED.**