[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14177

_____

ISMETA KADRIBASIC,

                                        Plaintiff-Appellant,

*versus*

WAL-MART, INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03498-SDG

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, Circuit Judge, and PROCTOR,* District Judge.

PER CURIAM:

This appeal requires us to determine whether an employee who failed to comply with her company's leave policy, which requires an employee to provide notice to a third party administrator of her intent to take leave under the Family Medical Leave Act ("FMLA"), was nonetheless entitled to FMLA protection. After careful review, and with the benefit of oral argument, we conclude she was not. We affirm the decision of the district court granting the employer's motion for summary judgment.

## I.  Background

### A.    *Kadribasic's Employment History*

Ismeta Kadribasic was a long-time employee of Walmart. Walmart hired Kadribasic as a part-time cashier in 2003 at its Sam's Club store in Snellville, Georgia. In 2013, she was promoted to club manager of the Snellville store. In March 2017, Kadribasic became the club manager of the Sam's Club in Duluth, Georgia. As manager of the Duluth store, Kadribasic was responsible for the operation of the facility, provided direction and guidance to subordinates, and ensured planning and execution to achieve results at the Club.

---

* Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

In April 2018, Angela Taylor was hired as market manager for the Atlanta area and became Kadribasic's supervisor. On April 20, 2018, Taylor made a scheduled visit to the Duluth store. She noticed trash inside and outside the store and that the store's "claims cage" was disorganized. Taylor brought these concerns to Kadribasic's attention. Kadribasic responded that the associate tasked with cleaning the trash had called out of work and the associate responsible for organizing the claims cage simply had not done the work. Taylor issued Kadribasic her first "written coaching" (*i.e.*, a disciplinary write-up), citing the failure to maintain the store in accordance with company standards.

Two months later, in June 2018, Kadribasic left the doors to the Club unlocked when she left for the night. Taylor planned to issue Kadribasic's second written coaching in July 2018, but each time Taylor visited the store, Kadribasic was not there.

Between July 12, 2018 and October 7, 2018, Kadribasic was away from the store on a combination of paid time off ("PTO") and maternity leave. Before taking her maternity leave, Kadribasic properly submitted a request for leave to Walmart's third-party leave administrator, Sedgwick.

B.     *Kadribasic's Injury*

On October 18, 2018, soon after returning from this extended leave, Kadribasic injured her back at work while bending down to push a pallet of merchandise. Walmart's company policy regarding work related injuries provides:

> Associates must report a work related injury or incident immediately to their supervisor or a member of management . . . .

> Associate injuries not requiring medical attention are referred to as Associate Incidents. All associate incidents are required to be reported to the Claims Administrator and to be keyed into the Incident Reporting System (IRS) within 24 hours of notice.

> Associate injuries requiring medical attention must be reported by a member of management through the . . . [IRS] within 24 hours from the time the associate requests medical treatment or when a member of management first becomes aware that the associate sought medical treatment.

On the day she was injured, Kadribasic completed a written "associate incident report" and asked general merchandise manager Hajra Kadric, who was with Kadribasic at the time of the injury, to "key in" the incident. Walmart's policy prohibits an injured employee from keying information about her own injury into the system. Therefore, it was Kadric's responsibility to key in the injury once she learned of it.

On October 21, 2018, Kadribasic informed Taylor that she had gone to the emergency room about her back that afternoon and that the doctor had excused her from work for two days. In response, Taylor told Kadribasic to have Kadric key in the incident, but Taylor did not mention any rule violation. Although the incident occurred on October 18, Kadric did not key in the incident until October 21. On October 23, Kadribasic was diagnosed with

muscle strains and sciatica, but she was permitted to return to work that day with certain restrictions on physical exertion.

On October 28 or 29, Kadribasic and Taylor had an in-person conversation at the Duluth store. Kadribasic broke down crying. Kadribasic claims that she cried as she told Taylor that she needed to take time off due to her back injury. Taylor testified that Kadribasic did not discuss her back injury or ask for leave during that conversation, but instead broke down because the Duluth store was "too big of a club for her."

On October 29, following a lunchtime doctor's appointment, Kadribasic texted Taylor saying that she was going home because she was in an "incredible amount of pain" but she would be back the following day "unless I feel like today." On November 6, 2018, she texted Taylor saying that she was again in pain and unable to go into work. Upon receiving Kadribasic's November 6 text message, Taylor communicated with fellow supervisor Darryl Stinson that Kadribasic "is constantly saying she is in pain and not working. How should we proceed with her? [ ] I really believe she is dodging me so I cannot administer the coaching [for the unlocked door incident]."

C.    *Kadribasic's Termination*

On November 8, 2018, Kadribasic, Taylor, and Kadric met to conduct a walkthrough of the Duluth store in preparation for a companywide sales event scheduled for November 10. Kadribasic and Kadric both testified that Taylor commented on how good the store looked. Taylor denied saying anything of the sort. Kadribasic

had trouble walking during the November 8 walkthrough. She requested a break, but Taylor did not allow it until about thirty to forty minutes later. Kadribasic also told Taylor that she would "need some time off."

During the course of the day, Taylor was finally able to administer to Kadribasic the written coaching for the June 26 unlocked door incident, her second written coaching. That coaching stated that Kadribasic had "failed to ensure that the outside and inside entrance door was deadbolted when exiting the Club."

Later in the day on November 8, Kadribasic went to physical therapy, the orthopedist, and eventually the emergency room. She informed Taylor that she was cleared to return to work on November 10. Her orthopedist recommended certain restrictions, but the ER stated she could return to work on November 10 with no restrictions. On the morning of November 9, Kadribasic told Taylor that she was still in pain but would "probably" be at the store later for final preparations in anticipation of the sales event scheduled the next day. When Taylor visited the facility on November 9, she was concerned that the store was not ready. Later that morning, Kadribasic texted Taylor that she would try to come in that evening for final preparations.

At 12:55 PM on November 9, Taylor called Walmart's Field People Partner, Alejandro Muñoz, to discuss her concerns about Kadribasic. During that phone call, Muñoz approved Kadribasic's termination. At 3:48 p.m. on November 9, after the termination had been approved, Kadribasic texted Taylor to see if Taylor would

be opposed to Kadribasic taking a week of PTO to "see if that [would] help [her] get back to normal" because "the pain [was] horrible." Taylor suggested they discuss the request in person the following Monday. When Kadribasic asked if Taylor was denying her PTO request, Taylor responded that they needed to clarify the schedule before she could grant PTO.

Sometime on November 9, unaware of her pending termination, Kadribasic contacted Sedgwick requesting six weeks of "baby bonding" leave. That evening, after submitting the request, Kadribasic went into the Duluth store. Taylor was there, and she administered a third written coaching to Kadribasic for not reporting her October 18 work injury to her supervisor until October 21 and for not having the incident keyed into the system within 24 hours. Taylor further informed Kadribasic that her employment was being terminated due to her failure to ensure that the store would be prepared for the November 10 one-day sale. The official reason given for Kadribasic's termination was her "Inability to Perform Job." Taylor was unaware of Kadribasic's FMLA request to Sedgwick at this time.

A few hours after Kadribasic submitted her FMLA request, but after Taylor terminated her, Sedgwick confirmed receipt of the request for leave. This confirmation was sent at 10:14 p.m. on November 9.

As noted above, although she texted Taylor about the possibility of taking PTO, Kadribasic did not specify that she wished to take FMLA leave at any time before her employment was

terminated. Taylor testified that there was no reason to discuss FMLA leave with Kadribasic because Kadribasic "had the ability to apply for leave at any time she chose to."

Walmart policy requires an employee to notify both her manager and the third party administrator, Sedgwick, "as soon as practicable" if the need for leave is not foreseeable. Both parties acknowledge that the need for Kadribasic to take the leave at issue was unforeseeable. Walmart's policy also requires supervisors to direct associates to Sedgwick when they "become aware of an associate's need or request to take FMLA leave." Under the policy, a supervisor "must recognize when an associate's request for time off is for an FMLA-qualifying circumstance and direct them to contact Sedgwick." Kadribasic was familiar with Walmart's FMLA leave policy. She had properly requested and been granted FMLA leave at least four times during her tenure with the company.

D.    *Proceedings Below*

On August 2, 2019, Kadribasic sued Walmart alleging that Walmart interfered with her rights under the FMLA. The parties filed cross-motions for summary judgment. On February 12, 2021, the Magistrate Judge issued a report and recommendation ("R&R") recommending that the court grant summary judgment in favor of Walmart on Kadribasic's FMLA interference claim. Both parties objected to the R&R.

The District Court adopted in part and denied in part the Magistrate Judge's R&R. The District Court concluded that although the parties disputed whether Taylor was aware of

Kadribasic's need or desire to take FMLA leave, that dispute was not material because Kadribasic failed to comply with Walmart's FMLA policy and thus could not "show she was entitled to FMLA leave or suffered interference with her FMLA rights." For that reason, the District Court granted summary judgment on Kadribasic's FLMA interference claim. Kadribasic appeals the district court's ruling.

## II.  Standard of Review

We review the granting of summary judgment *de novo*, applying the same legal standards that bound the district court. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999) (citing *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

## III.  Discussion

On appeal, Kadribasic argues that the District Court erred in granting summary judgment. We disagree. For the reasons explained below, the district court's entry of summary judgment is due to be affirmed.

In their briefing and at oral argument, the parties have focused on the Department of Labor ("DOL") regulations related to FMLA leave requests. The DOL regulation that interprets the FMLA on the issue presented here is unambiguous: "[w]hen the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). Here, it is undisputed that Kadribasic did not comply with Walmart's internal notice and procedural

requirements for requesting FMLA leave. Because she failed to establish that unusual circumstances prevented her from doing so, we hold that she was not entitled to FMLA leave. Accordingly, we affirm.

We divide our discussion into three parts. First, we explain why 29 C.F.R. § 825.303(c) controls our inquiry. Second, we consider whether Kadribasic has identified any "unusual circumstances" that would relieve her of her responsibility under § 825.303(c) to follow Walmart's FMLA policy. Finally, we address Kadribasic's argument that Walmart's conduct implied a waiver of her obligation to comply with the company's FMLA policy.

A.    *Section 825.303(c)*

"The FMLA entitles employees to take leave for certain family and medical reasons." *Ramji v. Hosp. Housekeeping Sys.*, 992 F.3d 1233, 1241 (11th Cir. 2021) (citing 29 U.S.C. §§ 2601, 2612). "Under the FMLA, a covered employer may not interfere with, restrain, or deny the employee's exercise or attempted exercise of her FMLA rights to coverage, leave entitlement, notice, benefits continuation, and job restoration." *Id.* (citing 29 U.S.C. § 2615(a)(1); 29 U.S.C. §§ 2601–2604; 29 C.F.R. §§ 825.100–825.803).

"To establish an FMLA interference claim, an employee must show she was entitled to a benefit under the FMLA and her employer denied her that benefit." *Id.* (citing *Muñoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1274 (11th Cir. 2020)). To establish that she was entitled to an FMLA benefit, "an eligible employee must demonstrate that she sought leave for a qualifying reason and that she

provided notice meeting certain criteria." *Id.* at 1242 (footnote omitted) (citing *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1194-96 (11th Cir. 2015)). The issue here is whether Kadribasic complied with Walmart's leave policy such that she was entitled to FMLA leave. She did not.

"An employee's notice of her need for FMLA leave must satisfy two criteria—timing and content—both of which differ depending on whether the need for leave is foreseeable or unforeseeable." *White*, 789 F.3d at 1195. Here, the parties agree that Kadribasic's need for leave was unforeseeable. Notice requirements for unforeseeable FMLA leave are governed by 29 C.F.R. § 825.303. As we review § 825.303, we note that § 825.303(a) deals with the *timing* of an employee's notice, while § 825.303(b) concerns the *content* of the notice. That is, subsections (a) and (b) outline the standards that apply in determining whether an employee has provided sufficient notice to the employer of the need to take FMLA leave.

It is § 825.303(c), however, that makes clear that if an employer establishes "usual and customary notice and procedural requirements for requesting leave"—absent "unusual circumstances"—those requirements control. In other words, if an employer has a company policy specifying how an employee must request FMLA leave, an employee must adhere to that policy.

Here, as the district court explained, "it is undisputed that Kadribasic did not follow Walmart's policy and did not contact Sedgwick between October 28 and November 8." She only contacted Sedgwick late in the day on November 9, leaving supervisors

unaware of her leave request until after she was informed of her termination. So, absent Kadribasic showing that "unusual circumstances" prevented her from following Walmart's policy, Walmart was well within its right to deny Kadribasic FMLA leave. *See* 29 C.F.R. § 825.303(c) ("If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied").

B.    *Unusual Circumstances*

The next question is whether there were unusual circumstances excusing Kadribasic's failure to comply with her employer's requirements for requesting leave. *See id*. The regulations do not define the term "unusual circumstances" but § 825.303(c) provides that "if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone." 29 C.F.R. § 825.303(c). In seeking guidance regarding what constitutes unusual circumstances, we also look to § 825.302(d), which governs foreseeable leave.

> Unusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full.

29 C.F.R. § 825.302(d).

Kadribasic argues that Taylor's failure to refer her to Sedgwick when Taylor learned of her injuries, as well as Taylor's "failure to point out Ms. Kadribasic's noncompliance are 'unusual circumstances' given the compressed timeline and Ms. Kadribasic's extreme pain." Kadribasic cites to a number of district court cases from other circuits to support her assertion that a supervisor's failure to follow or enforce the employer's FMLA procedures is an unusual circumstance that justifies an employee's noncompliance. *See Villegas v. Albertsons, LLC*, 96 F. Supp. 3d 624, 634 (W.D. Tex. 2015); *Dallefeld v. Clubs at River City, Inc.*, No. 15-cv-1244, 2017 WL 3013241, at *7-8 (C.D. Ill. July 14, 2017); *Woida v. Genesys Reg'l Med. Ctr.*, 4 F. Supp. 3d 880, 896 (E.D. Mich. 2014). But her argument misses the mark.

In *Villegas* and *Dallefeld*, the employers did not provide proper notice of their respective FMLA policies to employees, and the district courts held that a reasonable juror could find that unusual circumstances prevented those employees from complying with the employers' FMLA policies. *Villegas*, 96 F. Supp. 3d at 627, 634 (plaintiff's manager never referred Plaintiff to the handbook or informed him of the employer's FMLA procedures, and appeared not to even know the FMLA procedures himself); *Dallefeld*, 2017 WL 3013241, at 6-7 (a manager's testimony that employees could "request [leave] however they care to request it" created a genuine issue of fact as to whether the employer waived the notice requirement in its FMLA policy). In contrast, in *Woida*, the court determined that an employee who properly submitted each of her 27 other requests for FMLA leave could not claim that unusual

circumstances excused her non-compliance with her employer's FMLA notice policy. *Woida*, 4 F. Supp. 3d at 896-97.

The facts here are similar to those in *Woida*. Kadribasic previously (and properly) submitted at least four leave requests and each one was granted. So, she cannot now argue that she was led astray by Taylor's failure to refer her to Sedgwick to make a request. Further, Kadribasic's argument that "[t]he District Court also did not consider the compressed timeframe on November 8" is unavailing. Kadribasic injured her back on October 18 and made multiple trips to doctors' offices and the emergency room beginning on October 21. That she "went to physical therapy, went to the orthopedist, was in extreme pain, and went to the emergency room" between November 8 and 9 did not foreclose her opportunity to properly request FMLA leave at any time in the approximately three weeks between her injury and her termination.

Moreover, the "compressed timeframe" argument fails for an additional reason: Kadribasic *did* find the time to request paid time off from Taylor on November 9. The Rule 56 evidence before the District Court shows that Kadribasic was familiar with the leave process, as evidenced by her repeated and successful requests in the past. Similarly, she contacted Sedgwick later on November 9 to request six weeks of baby bonding leave. Therefore, Kadribasic failed to present evidence creating a material issue of fact about whether there was an obstacle to her making a proper FMLA request. Accordingly, Kadribasic has failed to demonstrate that unusual

circumstances justify her failure to comply with Walmart's FMLA leave policy.

C.    *Waiver*

Title 29 C.F.R. § 825.304(e) provides that "[a]n employer may waive employees' FMLA notice obligations or the employer's own internal rules on leave notice requirements." The regulation does not define the circumstances under which an employer waives the notice obligation. In this Circuit, however, "[w]aiver is the voluntary, intentional relinquishment of a known right." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1359 (11th Cir. 2018) (citation omitted). Kadribasic has not presented any substantial evidence that would support her argument that Walmart voluntarily and intentionally relinquished its right to enforce the notice requirements of its FMLA leave policy.

Kadribasic argues that "[b]ecause Ms. Taylor failed to follow Walmart's notice procedures, a reasonabl[e] jury [could] find that Walmart waived the policy . . . ." But, there is no legal or factual basis for that assertion. Our law on waiver is clear. Kadribasic has not shown a voluntary, intentional relinquishment of Walmart's notice requirements. No one at Walmart told Kadribasic that she could take FMLA leave without contacting Sedgwick or otherwise suggested that she was no longer required to follow the FMLA leave policy (a policy that she had followed at least four times previously). Further, although Walmart conceded at oral argument that its policy requires a manager to direct an associate to Sedgwick when the manager becomes aware of an associate's need or desire

to take FMLA leave, it did not concede—and the record does not suggest—that any such failure constituted a waiver of Walmart's clear notice policy.

Indeed, Kadribasic herself apparently recognized that Walmart had not waived its policy. On November 9, she reached out to Sedgwick to request baby bonding leave. Of course, by that time, the decision to terminate her employment had already been made. And, her belated request to Sedgwick betrays her own understanding of what Walmart's leave policy required. Therefore, Kadribasic failed to present evidence creating a genuine issue of material fact as to whether Walmart waived its FMLA leave notice policy.

## IV.  CONCLUSION

The District Court's entry of summary judgment in favor of Walmart on Kadribasic's FMLA interference claim is AFFIRMED.