[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13461
_____

D.C. Docket No. 1:18-cv-00734-TWT

NOORJAHAN RAMJI,

                                                        Plaintiff - Appellant,

versus

HOSPITAL HOUSEKEEPING SYSTEMS, LLC,

                                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 6, 2021)

Before ROSENBAUM, LAGOA, and ANDERSON, Circuit Judges.

ROSENBAUM, Circuit Judge:

        The Family Medical Leave Act ("FMLA") is a federal statute that entitles

eligible workers who need to recover from a serious injury to take up to twelve weeks

of unpaid leave during any twelve-month period.  Employers are prohibited from interfering with, restraining, or denying an employee's efforts to exercise any FMLA right.  Separately, most states[1] require employers to provide their employees with workers' compensation benefits.  Workers' compensation allows an employee who is injured in a work-related incident to receive payments for all reasonable medical care and lost wages resulting from that injury.

Sometimes the benefits of these laws can overlap.  That's what happened here.

Now, Defendant-Appellee Hospital Housekeeping Systems seeks to use one—workers' compensation—as a shield against the other—the FMLA.  Hospital Housekeeping's employee Plaintiff-Appellant Noorjahan Ramji seriously injured her knee while at work.  Hospital Housekeeping told her nothing about her rights under the FMLA, instead handling the injury solely as a workers' compensation claim.

After a few days off and a temporary light-duty assignment, Ramji received medical clearance to resume her regular-duty position.  But before Hospital Housekeeping would allow her to do so, Ramji first had to pass an essential-functions test, which required her to complete certain physical tasks that the doctor who cleared her was not advised of.  Among other things, Ramji had to repeatedly

---

[1] Texas, for instance, does not require employers to have workers' compensation.  *See* https://gov.texas.gov/organization/disabilities/workers_compensation (last visited Mar. 28, 2021); Tex. Stat. § 406.002.

2

engage in deep squats and bend to one knee. Though Ramji was able to perform several of these exercises, she began to experience pain in her injured knee before she finished all of them. As a result, Ramji did not pass the test. So Hospital Housekeeping discharged Ramji. At no point before Hospital Housekeeping fired Ramji did Hospital Housekeeping advise Ramji of her rights under the FMLA or give Ramji an opportunity to take twelve uninterrupted weeks of leave to rehabilitate her knee, even though the FMLA entitled her to that relief.

Ramji filed suit for interference with her FMLA rights. At the district court, the parties filed cross-motions for summary judgment. Hospital Housekeeping sought in part to avoid liability under the FMLA by pointing to its compliance with its workers' compensation responsibilities. The district court granted summary judgment in favor of Hospital Housekeeping.

But the FMLA does not set up a clash of Titans between itself and workers' compensation. So providing workers' compensation benefits cannot absolve an employer of all obligations under the FMLA. For this reason and others, and with the benefit of oral argument, we vacate the entry of summary judgment and remand for further proceedings.

## I.

We begin by recounting the record evidence. On a motion for summary judgment, we view the evidence and draw all reasonable inferences from it in the

light most favorable to the non-moving party—here, Ramji. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). Of course, should a case progress beyond summary judgment, the non-moving party will have to prove her allegations to a jury.

**A.**

For nearly eleven years, Ramji worked as a housekeeper, cleaning patient-examination rooms, hallways, and bathrooms at Eastside Medical Center in Snellville, Georgia. Her daily tasks included mopping, sweeping, dusting, cleaning walls, removing trash, and making beds.

In 2013, Hospital Housekeeping, which provides contracted cleaning and facilities-management services to hospitals, took over maintenance operations at Eastside Medical Center. Ramji's employment fell under Hospital Housekeeping.

On the morning of September 15, 2016, as Ramji was getting ready to clock out from her night shift, she tripped on the leg of a breakroom table, fell face down onto the ground, and injured her right knee. Pamela Merriweather, then the director of Hospital Housekeeping's division at Eastside Medical Center, assisted Ramji into a wheelchair and took her to the emergency room for an X-ray of her swollen knee.

Upon examining Ramji's knee, Physician Assistant Christina Eid issued Ramji a medical work excuse: "[Ramji] was seen on 9/15/2016 and is excused from work from 9/15/2016 through 9/18/2016."

4

At the time of her injury, Hospital Housekeeping did not provide Ramji with any information about eligibility for leave and rights under the FMLA. Instead, Hospital Housekeeping immediately handled Ramji's injury as a workers' compensation claim. And when Ramji needed to take eleven days off between the date of her accident and her return to work in a light-duty position, Hospital Housekeeping required Ramji to use sick leave.

During this eleven-day period, on September 23, Ramji had her first follow-up medical appointment with Dr. David Harkins of Athens Orthopedics. In accordance with Hospital Housekeeping's workers' compensation policy, Merriweather accompanied Ramji to all follow-up appointments and treatments. At the September 23 appointment, Dr. Harkins injected a cortisone shot into Ramji's knee and diagnosed her injury as right knee pain and derangement. Dr. Harkins also referred Ramji for physical-therapy sessions to occur two to three times per week for six to eight weeks. The goal of these sessions was to increase the knee's range of movement and strength while decreasing pain. Besides treating Ramji, Dr. Harkins issued a light-duty medical release permitting Ramji's return to work—but with the following restrictions: no squatting, kneeling, or climbing.

Three days after that appointment, Hospital Housekeeping offered Ramji the chance to return to a light-duty position with restrictions on kneeling, squatting, and climbing. That position included tasks like making copies, folding rags and mops,

creating washcloth origami, cleaning small items, counting inventory, and rolling silverware. Ramji accepted the offer and returned to work that day.

On October 10, Ramji, once again accompanied by Merriweather, attended her first physical-therapy session. The physical therapist observed signs and symptoms consistent with right knee derangement and recommended that Ramji initially be seen twice a week for four weeks, for a total of eight visits. But, the physical therapist added, therapy might be extended and occur more frequently, depending on Ramji's progression. Ramji found these physical-therapy sessions helpful in reducing her knee pain.

On October 21, before completing the physical therapist's full recommended physical-therapy course, Ramji had a second follow-up appointment with Dr. Harkins. She told Dr. Harkins that the cortisone injection she received during her September 23 appointment "took away all of her pain[,]" that "physical therapy has helped tremendously[,]" and that she was ready to return to work. After observing the knee's full range of motion without pain or instability, Dr. Harkins concluded that Ramji's right knee and ankle pain had been resolved and that she had reached maximum medical improvement with a zero-percent disability rating. As a result, Dr. Harkins reasoned, Ramji could return to regular-duty work that day.

Significantly, though, Merriweather, who once again accompanied Ramji to her appointment with Dr. Harkins, never advised Dr. Harkins about Ramji's regular

6

duties at Eastside Medical Center.  Nor did Merriweather explain that company policy required Ramji to complete an essential-functions test upon her return to work from her injury or what tasks the essential-functions test demanded.  Dr. Harkins also did not address the need for Ramji's remaining physical-therapy sessions, and he did not opine on Ramji's ability to complete specific tasks required in her regular-duty position.

With her medical release in hand, Ramji returned to work that same day. Marcia Gordon, then the Assistant Director of Hospital Housekeeping's second and third shifts at Eastside Medical Center, explained that the company's workers' compensation policy required that "[all] injured employees returning to regular duty . . . complete an Essential Functions Test."  Ramji, who was unaware of this requirement, the content of the test, or consequences of failing it, took the test.

The essential-functions test required Ramji to successfully complete twenty tasks assessing her ability to grip, bend, lift, twist, climb, and push.  An employee unable to complete every task listed on the test is subject to termination of her employment.

Five of the twenty tasks gave Ramji particular difficulty.  Ramji had to complete ten deep-knee bends or squats.  Deep-knee squats require the employee to squat down until her calves touch the backs of her thighs.  After Ramji completed five deep-knee squats, her right knee began to hurt.  Ramji informed Gordon of her

knee pain and her inability to perform any more squats. Gordon then brought in Merriweather to help finish administering the essential-functions test. Despite Ramji's recent injury and her complaints of knee pain, Merriweather insisted that Ramji complete the remaining deep-knee squats.

But Ramji's knee pain persisted, and she was concerned about exacerbating her injury. So Ramji asked Merriweather whether she could use accrued sick and vacation leave to give herself additional recovery time to allow her to be able to finish the essential-functions test upon her return from leave. Merriweather refused, stating that Ramji could not use her sick or vacation leave and insisting that Ramji finish the essential-functions test that day.[2]

With no other choice, Ramji continued plugging along with the test. As the test progressed, Ramji had trouble when Merriweather instructed Ramji to kneel on one knee until it touched the floor and then to stand up and kneel on the other knee until it touched the floor. Ramji's knee pain prevented her from being able to complete this task.

Next, Merriweather directed Ramji to use one hand to lift a twenty-pound bag out of a hamper and place into a soiled-linen cart. Ramji struggled to lift a ten-pound bag with one hand.

---

[2] Merriweather testified that she did not recall that Ramji asked for leave. But as we have noted, on a motion for summary judgment, we view the evidence and any reasonable inferences from it in the light most favorable to the non-moving party.

8

Merriweather also told Ramji to walk up and down a flight of stairs without using a handrail. Although Ramji walked up and down the stairs, she had to use the guardrail for support. Merriweather also noted that Ramji was "very wobbly coming down" and lost balance on the steps.

The last task that caused difficulty required Ramji to stand on her toes and hold for 30 seconds. Ramji claimed that she was able to hold the pose for more than 30 seconds, but the essential-functions test notes indicated that she did not successfully complete the task. After failing the essential-functions test, Ramji went home for the weekend.

When Ramji returned the following Monday, October 24, Merriweather issued written warnings to Ramji for past incidents, including the September 2016 accident that led to her knee injury, a December 2015 accident in which Ramji tripped on a phone cord and injured her forehead, and an August 2014 insubordination matter where Ramji failed to attend a mandatory staff meeting. Merriweather also notified Ramji that Hospital Housekeeping was terminating her employment for failing to complete five tasks on the essential-functions test. Ramji responded by again asking to use unused sick and vacation leave, but Merriweather denied the request, noting that she was firing Ramji.

Ramji could not pay out of her own pocket for medical appointments and physical-therapy treatments even though the treatments offered promising benefits.

9

So she hired a workers' compensation lawyer, who helped her successfully reinstate medical care and ultimately obtain a financial settlement. But the process of restoring benefits and approving medical providers resulted in somewhat delayed and interrupted follow-up medical and physical-therapy treatments, as we summarize below.

Four months after her termination, Ramji resumed medical appointments when she had her first appointment with Dr. Maurice Jove, who tried a variety of methods to reduce Ramji's knee pain, including a cortisone shot, unloader knee brace, six weeks of physical therapy, and an eight-week supply of an anti-inflammatory medication. After returning to physical-therapy sessions, Ramji felt improvements but wanted to continue physical therapy to ensure her knee completely healed.

Dr. Jove subsequently released Ramji to work "immediately with no restrictions," but he prescribed an additional three physical-therapy sessions per week for six weeks. Despite Dr. Jove's recommendation, Hospital Housekeeping never approved the additional physical-therapy sessions under workers' compensation, so Ramji stopped attending physical therapy. After a review of Ramji's MRI results, Dr. Jove observed that Ramji had osteoarthritis in her knee and recommended a knee replacement, since arthroscopic treatment would be ineffective.

10

Ramji obtained a second opinion from Dr. Scott Barbour, who also ultimately recommended a knee replacement. But Dr. Barbour concluded that Ramji's condition requiring treatment, including surgery, resulted primarily from the September 16 workplace accident.

Ramji and Hospital Housekeeping ultimately agreed to a settlement of her workers' compensation claim. Because of the costs, at no point until this time was Ramji able to receive an uninterrupted twelve-week period of treatment, including physical-therapy sessions.

After the settlement, Ramji began working with a physical therapist again. She fully recovered when she was finally able to take twelve continuous weeks of physical-therapy sessions and appropriate treatment. Ramji now maintains that she can perform all duties and functions required of her regular-duty position at Hospital Housekeeping.

**B.**

Ramji filed this suit against Hospital Housekeeping for interference with the exercise of her right to take FMLA leave. The parties filed cross-motions for summary judgment. After a hearing on the motions, the magistrate judge issued a report that recommended denying the cross-motions for summary judgment. Specifically, the report determined that Ramji's knee injury was a "serious health

condition" as defined under the FMLA. But the report recommended leaving two issues to be resolved by a reasonable trier of fact.

First, the report found that factual questions remained about whether Hospital Housekeeping had sufficient information to determine that Ramji was entitled to take FMLA leave when Ramji requested time off on October 21 and October 24, 2016. On the one hand, a reasonable jury could determine that Hospital Housekeeping lacked enough knowledge of Ramji's serious health condition because the release to regular duty indicated that she had reached maximum medical improvement with a zero-percent permanent disability. On the other hand, though, a reasonable jury could conclude that Merriweather, who attended Ramji's medical and physical-therapy appointments, was aware of the severity of Ramji's knee injury and need to take FMLA leave to recover, especially during Ramji's attempt of the essential-functions test.

Second, the report concluded that material questions of fact existed about whether Hospital Housekeeping's failure to provide Ramji with eligibility notice under the FMLA and refusal to allow her to take FMLA leave caused Ramji harm. Ramji presented evidence that her recovery stalled because she could not afford continuing medical treatment, and delayed approval for her worker's compensation claim led to periodic physical-therapy sessions scattered over a year and a half. In other words, the report reasoned, a reasonable jury could find that if Ramji had had

twelve weeks of FMLA leave, she would have been able to complete her medical rehabilitation and return to her former position (or an equivalent position) at the end of her leave. But Hospital Housekeeping also put forth evidence that Ramji did not fully recover until May 30, 2017, meaning she would have needed more than eight months for recovery, and that she ultimately needed a total knee replacement with an even more extensive recovery period.

The parties filed objections to the report and recommendation. Ultimately, the district court declined to adopt the report and recommendation. Instead, the district court denied Ramji's motion for summary judgment and granted Hospital Housekeeping's motion. In reaching this conclusion, the district court determined that Ramji was not entitled to FMLA benefits because Dr. Harkins cleared her at maximum medical improvement with a zero-percent impairment rating on October 21. Based on these circumstances, the district court reasoned that Hospital Housekeeping could not have been expected to conclude she was entitled to any leave under the FMLA. So the district court ruled that Ramji had no right to restoration to a different position or to a reasonable accommodation under the FMLA. Rather, the district court opined, Ramji had to file an Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5) ("ADA"), reasonable-accommodation claim to obtain relief. Ramji now appeals.

## II.

We review de novo the resolution of cross-motions for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). In conducting our review, we apply the same legal standards that bind the district court, so we assess the evidence and all reasonable inferences we can draw from it in the light most favorable to the non-moving party. *Id.*

## III.

The FMLA entitles employees to take leave for certain family and medical reasons. *See* 29 U.S.C. §§ 2601 and 2612. Among these, an eligible employee may take up to twelve weeks of leave because of a serious health condition that renders the employee unable to perform the functions of her position. *Id*. § 2612(a)(1)(D). The FMLA also guarantees an eligible employee the right to be restored to her former position, or an equivalent position, at the end of her leave, provided she can execute the essential functions of her job. *See id*. § 2614(a)(1). But if, after twelve weeks, the employee cannot perform an essential function of her job, her employer may choose to end her employment. *See* 29 C.F.R. § 825.216(c).

Under the FMLA, a covered employer may not interfere with, restrain, or deny the employee's exercise or attempted exercise of her FMLA rights to coverage, leave entitlement, notice, benefits continuation, and job restoration. *See* 29 U.S.C. § 2615(a)(1); 29 U.S.C. §§ 2601-2654; 29 C.F.R. §§ 825.100-825.803.

To establish an FMLA interference claim, an employee must show she was entitled to a benefit under the FMLA and her employer denied her that benefit. *Munoz v. Selig Enterprises, Inc*., 981 F.3d 1265, 1274 (11th Cir. 2020) (citing *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018)). But a technical FMLA violation alone is not enough. Rather, the employee must also "demonstrate some harm" from the alleged interference, and that harm must be "remediable by either "damages' or 'equitable relief.'" *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014) (quoting *Ragsdale v. Wolverine World Wide, Inc*., 535 U.S. 81, 89 (2002)). Below, we address each of these requirements as they relate to Ramji's claim.

## A.

We begin by considering whether Ramji showed she was entitled to an FMLA benefit. To satisfy this requirement, an eligible employee[3] must demonstrate that she sought leave for a qualifying reason and that she provided notice meeting certain criteria. *See White v. Beltram Edge Tool Supply, Inc*., 789 F.3d 1188, 1194-96 (11th Cir. 2015).

The record contains ample evidence that Ramji's knee injury served as a qualifying reason to take FMLA leave. An employee is entitled to FMLA leave if

---

[3] The parties do not dispute that Hospital Housekeeping and Ramji satisfy the statutory requirements for an FMLA-covered employer and eligible employee, respectively. *See* 29 U.S.C. §§ 2611(2)(A) and 2611(4).

15

she has "a serious health condition that makes [her] unable to perform the functions of [her] position . . . ." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Id*. § 2611(11)(B). To qualify as "continuing treatment" under FMLA regulations, treatment (1) must involve a period of incapacity of more than three consecutive, full calendar days, and (2) must require either (a) treatment by a healthcare provider at least twice within 30 days of the first day of incapacity or (b) treatment by a healthcare provider at least once that results in a regimen of continuing treatment under the supervision of the healthcare provider. 29 C.F.R. § 825.115(a)(1)-(a)(2).

Ramji's knee injury satisfies all these definitions.

First, Ramji injured her knee on the morning of September 15, and, after an emergency-room visit, she was excused from work from September 15 through September 18. That's more than three consecutive, full days, so it meets the first half of the "continuing treatment" standard 29 C.F.R. § 825.115(a)(1) articulates.

Second, Ramji attended a follow-up appointment with Dr. Harkins on September 23. At that appointment, he gave her a cortisone injection in her knee, restricted her to light duty, and referred her to physical-therapy sessions occurring two to three times each week for six to eight weeks. That satisfies the second

qualifying condition for "continuing treatment," since Dr. Harkins prescribed a continuing regimen of physical therapy for Ramji. *See* 29 C.F.R. § 825.115(a)(2).

Ramji therefore had a qualifying "serious health condition." 29 U.S.C. § 2611(11)(B). And that condition caused her to be unable to perform the essential functions of her job. *See id.* § 2612(a)(1)(D).

As for whether Ramji placed Hospital Housekeeping on sufficient notice for its duty to inform her of her right to FMLA leave, Ramji provided enough evidence there as well to allow a reasonable jury to conclude she met this requirement. This inquiry presents a mixed question of fact and law: the factfinder identifies the notice given, and the court assesses whether that notice was legally sufficient to cause the employer's obligations to be triggered.

The critical question we must consider asks whether the "employee adequately conveyed to the employer sufficient information to put the employer on notice that her absence was potentially FMLA-qualifying." *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997). An employee must provide proper notice to make out an FMLA interference claim. *White*, 789 F.3d at 1195. To fulfill this requirement, an employee's notice must be timely and contain sufficient information—requirements that differ, depending on whether the employee's need for leave is foreseeable or unforeseeable. *Id.*

When, as here, the employee's need for leave is unforeseeable, she must give notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R § 825.303(a). As for the content of the notice, an employee seeking FMLA leave for the first time need not "expressly assert rights under the [FMLA] or even mention the FMLA to meet . . . her obligation to provide notice." *Id.* §§ 825.301(b) and 825.303(b). Rather, notice must simply allow the employer to understand that the employee potentially qualifies for FMLA rights. FMLA regulations offer examples of sufficient notice, such as providing information about the "condition [that] renders the employee unable to perform the functions of the job" or "the anticipated duration of the absence, if known." *Id.* § 825.303(b).

Ramji contends that Hospital Housekeeping had real-time, sufficient notice of both her need for leave and the nature of her health condition. She points to the fact that Merriweather, who was Hospital Housekeeping's FMLA administrator for Eastside Medical Center, was there when Ramji injured herself. Not only that, but Merriweather handled Ramji's workers' compensation and workplace-injury forms. Hospital Housekeeping also knew that Ramji was excused from work from September 15 through September 18. Plus, Merriweather personally accompanied Ramji to follow-up medical appointments and the doctor-prescribed physical-therapy sessions. We agree that these facts demonstrate that Hospital Housekeeping knew of the nature of Ramji's injury and her potential qualification for FMLA leave.

18

So taking the evidence in the light most favorable to Ramji, Ramji has established that she was entitled to an FMLA benefit. For that reason, Ramji meets the first element of an FMLA-interference claim.

**B.**

That brings us to the second element of an FMLA interference claim—whether Ramji demonstrated that Hospital Housekeeping denied her a leave benefit under the FMLA. *White*, 789 F.3d at 1191.

When an employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, that triggers the employer's obligation to evaluate whether the employee's requested absence in fact qualifies for FMLA protection. *See Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005). The employer must also provide notice to the employee of her eligibility for and rights under the FMLA within a certain timeframe. *See* 29 C.F.R. § 825.300. A "[f]ailure to follow the notice requirements . . . may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." *Id.* § 825.300(e).

Ramji argues that Hospital Housekeeping denied her two types of FMLA notice: "eligibility notice" and "rights and responsibilities notice." To satisfy its eligibility-notice requirement, an employer must advise its employee of her "eligibility to take FMLA leave within five business days, absent extenuating circumstances." *Id.* § 825.300(b)(1). Rights-and-responsibilities notice must

"detail[] the specific expectations and obligations of the employee and explain[] any consequences of a failure to meet these obligations." *Id.* § 825.300(c)(1).  As relevant here, rights-and-responsibilities notice must advise the employee of (1) the fact that "the leave may be designated and counted against the employee's annual FMLA leave entitlement . . . and the applicable 12-month period for FMLA entitlement," (2) "the employee's right to substitute paid leave . . . ," as applicable, and (3) "the employee's rights to maintenance of benefits during the FMLA leave and restoration to the same or an equivalent job upon return from FMLA leave." *Id.* § 825.300(c)(1)(i), (iii), and (vi).  The employer must give the employee the rights-and-responsibilities notice at the same time it provides eligibility notice.  *Id.* § 825.300(c)(1).

Here, on September 16, a formal workers' compensation claim for Ramji was filed with Hospital Housekeeping.  That claim included information about the nature of Ramji's knee injury, the need for emergency medical and follow-up treatment, and a release excusing Ramji from three days of work.  And this information, in turn, activated Hospital Housekeeping's duty to provide Ramji with FMLA notice within five business days, or in this case, by September 23.  *See id.* § 825.300(b)(1).  But Hospital Housekeeping never offered Ramji FMLA eligibility and rights-and-responsibilities notice at any point during Ramji's knee-injury recovery.  So a

20

reasonable jury could conclude that Hospital Housekeeping interfered with Ramji's FMLA rights.

Hospital Housekeeping offers two excuses for why Ramji was not entitled to notice of her FMLA rights. First, it notes that it handled Ramji's on-the-job injury through workers' compensation. And Hospital Housekeeping asserts that, as Ramji was compensated for the excused days of work between September 15 and September 18 and was expected to return to work on September 19, it had no reason to believe Ramji needed FMLA leave for that period, and Ramji did not request FMLA leave. Second, Hospital Housekeeping observes that Ramji's September 23 follow-up appointment fell on the same day as the purported deadline for the employer's FMLA notice requirement. Based on this circumstance, Hospital Housekeeping contends that extenuating circumstances prevented it from offering Ramji FMLA leave before her appointment. And because Hospital Housekeeping waited until after the appointment before making an FMLA determination, it reasons, offering Ramji FMLA leave at that time would have contradicted Dr. Harkin's medical assessment that Ramji could return to light-duty work on September 23.

Hospital Housekeeping's first argument fails as a matter of law. Hospital Housekeeping cannot exempt itself from its FMLA notice obligations by offering Ramji paid workers' compensation from the date of her injury on September 15

through her return to light-duty work on September 26.  In fact, the FMLA regulations contemplate this scenario and specify that "the workers' compensation absence and FMLA leave may run concurrently."  *See* 29 C.F.R. § 825.702(d)(2) ("An employee may be on a workers' compensation absence due to an on-the-job injury or illness which also qualifies as a serious health condition under FMLA.  The workers' compensation absence and FMLA leave may run concurrently (subject to proper notice and designation by the employer).").

Hospital Housekeeping's second argument similarly lacks merit.  Ramji's acceptance of a light-duty position did not relieve Hospital Housekeeping of its FMLA obligations.  The FMLA regulations unambiguously prohibit precisely this employer conduct:  "[i]f FMLA entitles an employee to leave, *an employer may not, in lieu of FMLA leave entitlement*, require an employee to take a job with a reasonable accommodation."  *See* 29 C.F.R. § 825.702(d)(1) (emphasis added); *see also id.* § 852.702(d)(2) ("If the employer offers [a light-duty] position, the employee is permitted but not required to accept the position.  As a result, the employee may no longer qualify for payments from the workers' compensation benefit plan, but the employee is entitled to continue on unpaid FMLA leave until either the employee is able to return to the same or equivalent job the employee left or until the 12-week FMLA leave entitlement is exhausted.") (citation omitted).

So once Dr. Harkins cleared Ramji for a light-duty position instead of the same or equivalent position she had, Ramji was entitled to decline Hospital Housekeeping's light-duty job offer.  29 C.F.R. § 825.207(e).  But Ramji never had the opportunity to decide between taking a light-duty position or taking unpaid FMLA leave.  Hospital Housekeeping made that choice for her by offering only a light-duty assignment.  *See id.* § 825.220(d) (specifying that an "employee's acceptance of such light duty assignment does not constitute a waiver of the employee's prospective rights, including the right to be restored to the same position the employee held at the time the employee's FMLA leave commenced or to an equivalent position").

And even assuming Hospital Housekeeping had the best of intentions in adopting a wait-and-see approach after Ramji's September 23 follow-up appointment, an "employer's motives are irrelevant" under the FMLA.  *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (quoting *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001)).  We also find no basis to conclude that this reason for Hospital Housekeeping's delay qualifies as an extenuating circumstance justifying its failure to provide Ramji with notice within the five-day period.  29 C.F.R. § 825.300(b)(1).  Because Hospital Housekeeping did not give Ramji any FMLA notice whatsoever, it did not satisfy its FMLA notice obligations under 29 C.F.R. § 825.300(b)(1) and (c)(1).  It therefore

23

denied her a leave benefit under the FMLA, so Ramji established the second element of the FMLA interference claim.

## C.

Finally, we must determine whether Ramji can demonstrate harm, or prejudice, resulting from the employer's interference with her exercise (or attempted exercise) of an FMLA benefit to which she is entitled. *White*, 789 F.3d at 1191. An employee may obtain relief for interference with an FMLA right only if she "has been prejudiced by the violation." *Ragsdale*, 535 U.S. at 89 (citing 29 U.S.C. §§ 2615 and 2617). So an employee must show that the FMLA violation caused her to suffer injury that could be remedied in a way that the FMLA allows: damages or equitable relief. *See id.*

First, as relevant here, when an employee has been denied or lost wages, the employer can be liable for "damages," including "any wages, salary, employment benefits, or other compensation" that the employee has not received "by reason of" the FMLA violation. 29 U.S.C. § 2617(a)(1)(A)(i)(I). Second, employers are liable for "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id.* § 2617(a)(1)(B). Ramji contends that she can demonstrate two forms of prejudice resulting from Hospital Housekeeping's violations: Hospital Housekeeping's refusal to reinstate her and its denial to her of a lump-sum payment.

24

Beginning with reinstatement, Ramji observes that the FMLA notice provisions exist to ensure that employees "make informed decisions about leave." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 301 (4th Cir. 2016) (quoting *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 144 (3d Cir. 2004)). She asserts that, consistent with its notice duties, Hospital Housekeeping should have advised Ramji of her right to take FMLA leave. Had Hospital Housekeeping done so, Ramji asserts, she would have used that knowledge to (1) make informed decisions about her healthcare with the knowledge that her job would be protected, (2) receive additional physical therapy and medical treatment for her knee, and (3) return to work after further treatment.

More specifically, when faced with the essential-functions test (or at the first sign of pain from the essential-functions test) that would end her employment if she did not pass it, she would have made the informed decision to first take the full twelve weeks of FMLA leave. Then she could have used that time to undergo a complete course of continuous physical therapy and to have longer to heal and regain her strength before attempting to take the essential-functions test. As Ramji explained,

> If Ms. Merriweather let me take FMLA leave, I would have gotten physical therapy during my leave knowing that my job would be held for me while I was on leave. I did not know that they had to keep my job open. I would have found a way to pay for the treatment to keep my job. I could have borrowed money from my sister or other family

25

members.  I would have gotten the therapy because I really wanted my job back.

Hospital Housekeeping retorts that providing Ramji with the required notice would have made no difference.  In its view, even if Ramji received notice of her right to FMLA leave and benefits (whether on September 15, the date of her injury, or October 21, the date she failed the essential-functions test), Ramji would not have been able to completely recover before the twelve weeks of FMLA leave expired.  So, Hospital Housekeeping reasons, she would not have been reinstated because she still would have failed the essential-functions test.  In support of this argument, Hospital Housekeeping relies on the statements of Dr. Jove, who testified in the resolution of Ramji's state workers' compensation claim.  Dr. Jove opined that Ramji could have returned to complete knee function after only a total knee replacement, for which Ramji would have required more than twelve weeks to fully recover.[4]

On this record, we conclude that a material issue of fact exists over whether an uninterrupted twelve-week FMLA leave period would have made a difference to whether Ramji could have passed her essential-functions test and returned to work.

---

[4] Specifically, Dr. Jove estimated that "the recovery to walking and being able to get back to work [after a total knee replacement] . . . is probably going to be eight to twelve weeks.  The full strength and everything in her leg may take two to three years to rehab her quadriceps to get her where she was ten years ago, because the arthritis had been there for some time."  Dr. Jove's estimates for Ramji's return to regular work in eight to twelve weeks was based on a position that did not "involve squatting and stooping all day long."

True, a reasonable jury might accept Dr. Jove's medical opinion that Ramji would not have successfully recovered during twelve weeks of FMLA leave. But a reasonable jury would not be required to agree with Dr. Jove, in view of the other evidence in the record. This record also supports the conclusion that Ramji aggravated her condition during the essential-functions test administered so soon after her injury. And that, along with the delay in uninterrupted physical therapy, contributed to the injury and impaired her chances for a faster recovery by the time Dr. Jove met with Ramji.

In particular, Dr. Jove did not meet with Ramji until five months after her workplace injury. And even at that time, because Ramji no longer received medical benefits from Hospital Housekeeping following her termination, Ramji had been able to complete only four of the approved 24 physical therapy sessions.[5]

A reasonable jury could draw the inference that when Ramji presented her knee to Dr. Jove five months after her injury, the injured knee Dr. Jove saw was not in the condition it would have been had Ramji taken twelve weeks of FMLA leave after the accident and received the entirety of her necessary treatment, instead of aggravating the injury by trying to complete the essential-functions test too early in her recovery period and having her necessary physical therapy delayed. Indeed,

---

[5] Dr. Harkins prescribed two to three physical therapy sessions each week for a period of six to eight weeks. Ramji's physical therapist's notes dated October 27, 2016, indicated that Ramji received only four physical-therapy sessions following the evaluation of her right knee.

27

Ramji attested that once she eventually did receive a full twelve weeks of physical therapy, her knee regained its original ability, and she can now perform all tasks from the essential-functions test.[6]  A jury might find this evidence particularly compelling in light of Dr. Barbour's conclusion that Ramji's condition requiring treatment resulted primarily from the September 16 accident, not arthritis.  In other words, unlike Dr. Jove, Dr. Barbour did not think that Ramji had a preexisting condition that would have substantially hindered her recovery.

That is enough to create a material issue of fact concerning whether Hospital Housekeeping's failure to give Ramji the required FMLA notice prejudiced Ramji's ability to obtain reinstatement to her job.  To the extent that Hospital Housekeeping suggests that Ramji must definitively prove she would have been able to recover within twelve weeks, it is mistaken.  The evidence Ramji has produced is enough to allow a reasonable jury to find in her favor.  Requiring ironclad proof is more than summary judgment requires, and in a situation like this one, it would allow an employer to benefit from its failure to comply with the FMLA and provide the required notice.

---

[6] Hospital Housekeeping also argues that Ramji should be judicially estopped from claiming that her twelve weeks of therapy healed her in July 2018 because Ramji argued that same month in her workers' compensation claim that she was totally disabled and needed a total knee replacement.  But Hospital Housekeeping mischaracterizes Ramji's position.  She has consistently stated that she found her physical-therapy appointments useful, but she was denied the opportunity to regularly access physical therapy over a continuous twelve-week period.  *See supra* n.5.

This alone is sufficient for Ramji to have demonstrated prejudice. *See, e.g., Hannah P. v. Coats*, 916 F.3d 327, 346-47 (4th Cir. 2019) (precluding summary judgment on an interference claim when the record reflected that had the plaintiff known that the FMLA protected her position, she could have structured her leave differently and used sick leave for her leave of absence).[7]

But Ramji has also presented enough evidence to demonstrate a material issue of fact over whether Hospital Housekeeping's failure to provide FMLA notice prejudiced her by inflicting damages. As Ramji points out, Hospital Housekeeping's FMLA policy requires that employees "must use earned, but unused, paid time off, such as vacation and sick pay during the absence." Significantly, it further explains that "[a]ll unused vacation and sick time runs concurrently with FMLA leave and will be paid out in one lump sum at the time of [the] FMLA start date" (emphasis omitted). So had Hospital Housekeeping given the proper FMLA notice, Ramji asserts, she would have taken her leave as FMLA leave and received a lump-sum payout of her accrued paid sick and vacation leave. But because Hospital Housekeeping failed to provide the required notice, Ramji continues, she lost out on that lump-sum payment.

---

[7] Similarly unavailing is Hospital Housekeeping's argument that an ADA reasonable-accommodation claim offered Ramji her sole option for relief. Hospital Housekeeping cannot shirk its FMLA obligations and force Ramji into an ADA claim by depriving her of a chance to take FMLA leave to which she is entitled.

Hospital Housekeeping disagrees that Ramji can show prejudice this way. It notes that it initially handled Ramji's claim as a workers' compensation claim. So, it reasons, if Ramji later tried to designate her leave, she would be unable to do so, since, in Hospital Housekeeping's view, the regulations render "substitution of the employee's accrued paid leave . . . [in]applicable." 29 C.F.R. § 825.207(e).

The problem with Hospital Housekeeping's position is that it accounts for only the leave Ramji took that was covered by workers' compensation. But that leave amounted to just a small portion of the total twelve-week period of leave that Ramji could have taken under the FMLA. And as soon as the FMLA leave kicked in exclusively, the regulations again would have permitted substitution of accrued paid leave. *See id.* So Ramji could have chosen or Hospital Housekeeping could have required Ramji to use her accrued paid leave. In fact, under Hospital Housekeeping's own policy, Ramji would have been entitled to her accrued-leave payout. So Ramji has additionally and alternatively pointed to evidence in the record that establishes a material issue of fact concerning prejudice in the form of damages. Whether by damages or equitable relief (or both), Ramji satisfies the final requirement for a successful FMLA-interference claim—harm—so her claim survives summary judgment.

30

## IV.

For these reasons, we vacate the grant of summary judgment in favor of Hospital Housekeeping and remand for a trial.

**VACATED and REMANDED.**