[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11127

Non-Argument Calendar

_____

IRIS N. WILSON,

Plaintiff-Appellant,

*versus*

CSX TRANSPORTATION, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:21-cv-01212-TJC-PDB

_____

Before LUCK, LAGOA and WILSON, Circuit Judges.

PER CURIAM:

Iris Wilson, proceeding *pro se* on appeal, appeals the district court's grant of summary judgment in favor of defendant CSX Transportation ("CSX") on Wilson's claims for interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a), and Wilson's race discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and the Florida Civil Rights Act, Fla. Stat. § 760.10(1)(a). Wilson argues that Magistrate Judge Patricia Barksdale should have recused herself from the case, and that the Honorable Henry Lee Adams should have recused himself sooner. After a careful review, we affirm.

## I.

Wilson began working for the railroad company CSX in 1999. In May 2018, she was promoted to crew operations supervisor, a "very critical" role that involves managing staff and logistics to help trains and overall operations run on schedule. A crew operations supervisor must be on duty 24 hours a day, 7 days a week, and 365 days a year. In that position, Wilson had several higher-ups including Jori Lovelady, Lauren DeAlexandris, and Walter Sieruga.

In December 2018, Wilson received emergency gallbladder surgery and was on leave from December 20, 2018 to January 12, 2019. Between May and June 2019, Wilson took another five

weeks leave of work due to anxiety. And on August 5, 2019, Wilson was injured in a car accident. She testified that Jolanda Johnson, the senior benefits manager at CSX, told her that she had up to 26 weeks to recover from the accident, and that neither Johnson nor DeAlexandris advised her to apply for FMLA leave. Wilson was projected to return to work at CSX on October 1, 2019, but continued pain from the accident prevented her from returning until November 18, 2019. Wilson testified that after consulting with her doctors regarding her treatment options, she elected to forgo surgery because she wanted to return to work.

During Wilson's leaves, DeAlexandris, CSX's chief medical officer Dr. Craig Heligman, and CSX's human resources business partner Kim Waller exchanged emails discussing Wilson's absences. In May 2019, DeAlexandris emailed Heligman and another CSX employee about Wilson's anxiety-related leave, expressing that Wilson's absence was "impactful" and asking whether it was possible to designate Wilson's leave as an FMLA leave. In June 2019, DeAlexandris emailed Waller to find out whether it was possible to backfill Wilson's position, to which Waller responded that Wilson's FMLA entitlement would exhaust on July 3 if Wilson did not return to work before then. After Wilson's car accident in August 2019, DeAlexandris again emailed Heligman, stating that there was "another issue" with Wilson, who had "supposedly" been in a car accident. She wondered whether she was obligated to accept Wilson's word regarding her accident or if she could require documentation of it. In response, Heligman suggested that Wilson should be required to apply for FMLA leave to "run out her FMLA

entitlement more quickly" so CSX could fill her position. DeAlexandris then forwarded her exchange with Heligman to Waller and another CSX employee, stating that she needed advice on "how best to handle this" and that Wilson's absences were a "major disruption."

On August 12, 2019, as part of an email exchange, Johnson stated that Wilson had "8.6 weeks available under the FMLA." She further stated that Wilson's past leaves were not designated under FMLA, but "a change to the FMLA designation process has been made to address this type of scenario. However, it was put into place after [Wilson's] leave period." DeAlexandris replied that she did not understand how Wilson could have 8.6 weeks of FMLA leave remaining given her previous absences. Waller also stated that due to Wilson's "recurring trend of absenteeism," Wilson "need[ed] to be addressed formally in writing regarding her attendance expectations."

A few days later, Waller emailed another CSX employee, stating that DeAlexandris wanted "to fill [Wilson's] position as soon as possible," but Wilson still had FMLA coverage. Waller also noted that her absences were "creating strain on the workforce because the rest of the team has to cover [Wilson's] shifts."

After the email exchange between DeAlexandris and Johnson, CSX retroactively designated some of Wilson's previous leave as FMLA leave. But CSX did not follow its standard process for FMLA designation. They did so without Wilson filing an application for FMLA leave and without timely notifying Wilson that her

leave was being designated as FMLA leave. As a result, under CSX adjusted records, Wilson used 3.4 weeks of FMLA leave from December 20, 2018 to January 12, 2019 for her gallbladder surgery; 5 weeks of FMLA leave from May 4 to June 9, 2019 for her anxiety; and 3.6 weeks of FMLA leave from August 5 to 28, 2019 for her car-accident injuries. Wilson remained on non-FMLA leave from August 29 to November 18, 2019.

Waller made the ultimate decision to fill Wilson's position. In September 2019, Waller emailed DeAlexandris that she was getting approvals to place a post for Wilson's position on October 1. Wilson testified that after she failed to return to work on October 1, CSX informed her the next day that her position as crew operations supervisor was being filled and she would have the choice of leaving the company or returning to a union position. CSX also told Wilson that she had exhausted her FMLA leave. It was the first time that CSX had notified Wilson that her past leaves were designated as FMLA leaves. The next day, Sieruga emailed Waller to inform her that she could move ahead with filling Wilson's position. On November 5, 2019, CSX hired Nate Christman, a white man, to fill Wilson's previous role as crew operations supervisor. He began work on November 9. Wilson returned to CSX in a union position on November 19.

Wilson alleged that CSX's decision to replace her with a white man was not only a violation of the FMLA but also racial discrimination. She testified that she was the only black employee in her department and that Lovelady, DeAlexandris, and Sieruga

discriminated against her based on her race.  As another example, Wilson testified that CSX allowed another white employee in a different role, Brian Strachan, to work remotely for over eight weeks without taking FMLA leave, but the company never gave Wilson the same opportunity.  When pressed if there were any other instances of racial discrimination, Wilson replied that the demotion and remote work were the "only evidence" she had.  She stated that she never heard Lovelady, DeAlexandris, or Sieruga make any race-based comments nor saw any correspondence with such comments.

In response, DeAlexandris testified that Strachan took FMLA leave in 2019, but his leave was intermittent.  Wilson, however, was the only crew operations supervisor who took an extended leave of absence.  Since her role was "mission critical" to the company, other crew operations supervisors had to cover her responsibilities.  Moreover, Wilson's role was not eligible for remote work, and she never requested to work remotely.

Wilson filed suit against CSX, alleging claims of FMLA interference pursuant to 29 U.S.C. § 2615(a)(1); FMLA retaliation pursuant to 29 U.S.C. § 2615(a)(2); and racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), and the Florida Civil Rights Act, Fla. Stat. § 760.10(1)(a).

The case was initially assigned to Judge Henry Lee Adams and Magistrate Judge Patricia Barksdale.  After entering several non-dispositive orders, including one denying Wilson's request for oral argument on CSX's motion for summary judgment, Judge

Adams *sua sponte* recused himself because he owned CSX stock. The case was later assigned to the Honorable Timothy J. Corrigan, who reviewed the merits of CSX's motion.

The district court granted CSX's motion for summary judgment on all claims. First, it found that CSX gave Wilson 23.4 weeks of leave within a 12-month period, including the required 12 weeks of FMLA leave. While CSX did not follow FMLA's notice requirement when it retroactively designated Wilson's leave as FMLA leave, the district court noted that "technical violations are not actionable unless there is prejudice to the employee." And Wilson has provided no evidence of prejudice, like other treatment plans that would have allowed her to return to work earlier and retain her position. Therefore, her FMLA interference claim failed. Second, the district court assumed without deciding that Wilson had established a *prima facie* case of FMLA retaliation. Still, it found that Wilson could not show that CSX's proffered reasons for replacing Wilson were pretextual. CSX posted the job opening only after Wilson exhausted her FMLA leave, did not return to work on October 1, 2019, and had no expected return date. Third, as for her race discrimination claim, the district court held that Wilson failed to make a *prima facie* showing of race discrimination because there was no circumstantial evidence of disparate treatment based on race. Even assuming Wilson could make a *prima facie* case, the district court still found that CSX's proffered reasons for filling her position were not pretext for discrimination. There was no dispute that Wilson's role as crew operations supervisor was "mission critical" to the company, and the final decision to backfill her position

was made only after she failed to return to work on October 1 and did not provide an expected return date.

Wilson timely appealed the district court's judgment.  She also filed a *pro se* motion to recuse Judge Barksdale, arguing that she should have recused herself because she was formerly counsel for CSX and had been an associate at a law firm that represented CSX.  That motion was denied.

## II.

We review a district court's grant of summary judgment *de novo*, "viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in its favor."  *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1172 (11th Cir. 2024).  A grant of summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*

We review a district judge's decision not to recuse himself for abuse of discretion.  *Jenkins v. Anton*, 922 F.3d 1257, 1271 (11th Cir. 2019).  If the plaintiff did not move to recuse the district court judge, but, on appeal, argues that the judge should have *sua sponte* recused himself from the case, then we review for plain error.  *Id.* at 1272.

## III.

We begin with Wilson's FMLA interference claim.  The FMLA entitles employees to take leave for certain family and medical reasons.  *See* 29 U.S.C. § 2612.  Among these reasons, an

employee may take up to 12 weeks of leave because of a serious health condition that renders the employee unable to perform the functions of her position. *Id.* § 2612(a)(1)(D). The FMLA also guarantees an eligible employee the right to be restored to her former position, or an equivalent position, at the end of her leave. *Id.* § 2614(a)(1). "But if, after twelve weeks, the employee cannot perform an essential function of her job, her employer may choose to end her employment." *Ramji v. Hospital Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021) (citing 29 C.F.R. § 825.216(c)).

Under the FMLA, a covered employer may not interfere with, restrain, or deny the employee's exercise or attempted exercise of her FMLA rights. 29 U.S.C. § 2615(a)(1). To establish a claim of FMLA interference, an employee must show that she was entitled to a benefit under the FMLA and that her employer denied her that benefit. *Ramji*, 992 F.3d at 1241. A technical FMLA violation, however, is not enough. *Id.* The employee must demonstrate that the alleged interference caused them harm, "and that harm must be 'remediable by either damages or equitable relief.'" *Id.* (quotation marks omitted); *see id.* at 1245.

On appeal, Wilson argues that the district court erred in granting summary judgment for CSX because she was denied her 12 weeks of FMLA leave and was prejudiced by CSX's failure to notify her of her FMLA rights. She asserts that there is a genuine dispute of material facts over how her FMLA leave was calculated, stating that when she returned to work on November 19, 2019, she still had one week and three days of FMLA leave left. As a result of

CSX's retroactive designation of her past leaves as FMLA ones and its failure to notify her of that change, Wilson could not calculate her remaining weeks under FMLA.

But Wilson's own absences prove that CSX granted Wilson the 12 required weeks of FMLA leave and more—Wilson's three leaves in a 12-month period totaled to 23.4 weeks. CSX can retroactively designate leave as FMLA leave if appropriate notice is given to the employee and a failure to timely designate leave as FMLA does not cause harm or injury to the employee. 29 C.F.R. § 825.301(d). While CSX did commit a technical violation by converting her prior leaves to FMLA leaves without notifying Wilson first, a technical FMLA violation is insufficient to show prejudice or harm. *See Ramji*, 992 F.3d at 1241. The employee must demonstrate that the alleged interference caused them harm, "and that harm must be 'remediable by either damages or equitable relief.'" *Id.* (quotation marks omitted); *see id.* at 1245.

Here, it is undisputed that Wilson could not return to work until November 19, well after her exhaustion of the 12 weeks of FMLA leave that she was entitled to. We thus conclude that the district court did not err in granting summary judgment to CSX on Wilson's FMLA interference claim because CSX granted Wilson more than the 12 required weeks of FMLA leave and Wilson has not demonstrated any harm or shown that she was prejudiced by CSX's technical violations. *See Ramji*, 992 F.3d at 1241, 1245.

**IV.**

We turn next to Wilson's FMLA retaliation claim. To prove FMLA retaliation, an employee must show that her employer intentionally discriminated against her via an adverse employment action for having exercised a right under the FMLA. *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017). A claim of FMLA retaliation can be supported by either direct or circumstantial evidence. *Lapham v. Walgreen Co.*, 88 F.4th 879, 889 (11th Cir. 2023), *cert. denied*, No. 23-1283, (U.S. Oct. 7, 2024). When a plaintiff presents only circumstantial evidence and no direct evidence, courts apply the *McDonnell Douglas* burden-shifting framework to FMLA retaliation claims. *Id.*; *see also McDonnell Douglas Corp v. Green*, 411 U.S. 792, 801–05 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation by showing (1) that the plaintiff engaged in statutorily protected conduct, (2) that the plaintiff suffered an adverse employment action, and (3) that there is some causal relation between the two events. *Lapham*, 88 F.4th at 889. "[T]he proper causation standard for FMLA . . . retaliation claims is but-for causation." *Id.* at 893.

If the plaintiff makes a *prima facie* case, the burden then shifts to the defendant, who must proffer a legitimate reason for the adverse action taken against the plaintiff. *Id.* at 889. The responsive burden is a simple burden of production that does not involve a credibility assessment. *Id.* If the defendant does so, the burden then shifts back to the plaintiff, who must then prove by a preponderance of the evidence that the defendant's proffered reason is mere pretext for prohibited, retaliatory conduct. *Id.* Summary

judgment is appropriate for the employer if the plaintiff fails to show the employer's proffered reasons for the adverse action "were merely pretext for retaliation and that, but for her attempts to exercise her FMLA rights, she would not have" suffered the adverse action. *Id.* at 895.

Here, Wilson argues that CSX's proffered reasons for filling her role—describing the crew-operations-supervisor role as "mission critical" and noting her indefinite leave of absence—were pretext for retaliation against her for using her FMLA leave. She states that during her absence, there were no staff shortages or problems operating CSX. Characterizing her role as "mission critical" is meaningless, according to Wilson, because "all roles are mission critical" in the logistics industry. The real reason for her demotion, Wilson argues, is DeAlexandris's personal animus towards her. Wilson points to DeAlexandris's email characterizing Wilson's leave as a "major disruption" as evidence of retaliation.

Even assuming Wilson made a *prima facie* showing of FMLA retaliation, we conclude that she does not meet her burden of showing that CSX's reasons for demoting her were pretextual. As Wilson admitted in her deposition, her only evidence of FMLA retaliation were the emails and the general circumstances surrounding her demotion. That is insufficient to raise a genuine issue of dispute that CSX's proffered reasons were pretext or that, but for using her FMLA leave, she would not have been demoted. In her deposition, Wilson acknowledged the importance of the crew-operations-supervisor role and its immense responsibility of keeping

the trains running on schedule.  It is a job that requires around-the-clock attention.  And her absence after her car accident left a heavy strain on the company because CSX had to reschedule other employees to cover Wilson's work.  Indeed, DeAlexandris's emails about Wilson's leave being "impactful" to operations and a "major disruption" to the department are aligned with the importance of Wilson's role in CSX.

And even under the strain of her absence, CSX held Wilson's position open for her until Wilson failed to return to work as scheduled on October 1 and did not provide a timetable on when she would return.  We thus conclude that the district court did not err by granting summary judgment to CSX on Wilson's FMLA retaliation claim because Wilson did not provide evidence rebutting CSX's proffered legitimate, non-retaliatory reasons for filling her position.  *See Lapham*, 88 F.4th at 889, 895.

## V.

We now address Wilson's race discrimination claims under Title VII of the Civil Rights Act and the Florida Civil Rights Act.  Title VII of the Civil Rights Act prohibits private employers from discriminating against an employee based on, *inter alia*, their race.  42 U.S.C. § 2000e-2(a).  The Florida Civil Rights Act does the same.  Fla. Stat. § 760.10(1)(a).  Race discrimination claims under both Title VII and the Florida Civil Rights Act are analyzed under the same framework.  *Harris v. Pub. Health Tr. of Miami Dade Cnty.*, 82 F.4th 1296, 1300 n.2 (11th Cir. 2023).

A plaintiff typically makes a case of discrimination through circumstantial evidence using the *McDonnell Douglas* burden-shifting framework. *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012). Under this framework, the plaintiff must first establish a *prima facie* case by showing that she (1) "belongs to a protected class," (2) "was subjected to an adverse employment action," (3) "was qualified to perform the job in question," and (4) her "employer treated 'similarly situated' employees outside her class more favorably." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023) (quotation omitted).

A plaintiff establishes that a similarly situated employee outside of her protected class was treated differently when she presents evidence of a comparator, or someone who is "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1231 (11th Cir. 2019) (*en banc*). Although it is a case-by-case determination, ordinarily, a similarly situated comparator will have (1) "engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) "been under the jurisdiction of the same supervisor as the plaintiff"; and (4) shared "the plaintiff's employment or disciplinary history." *Id.* at 1227–28. A plaintiff does not have to prove that she and her comparators "are identical save for their race" or that they have the same job title, and "minor differences in job function" will not "disqualify a would-be comparator." *Id.* at 1227.

"The prima facie showing entitles the plaintiff to a rebuttable presumption of intentional discrimination." *Tynes*, 88 F.4th at 944. "The defendant then rebuts that presumption (if it can) by offering evidence of a valid, non-discriminatory justification for the adverse employment action." *Id.* "Once that justification is offered, the presumption of discrimination falls away and the plaintiff tries to show not only that the employer's justification was pretextual, but that the real reason for the employment action was discrimination." *Id.* "This final question merges with the plaintiff's ultimate burden of persuading the factfinder that [the plaintiff] has been the victim of intentional discrimination." *Id.* (quotation marks omitted).

In evaluating pretext, we must consider all the evidence and then determine whether the plaintiff has cast doubt on the defendant's proffered, non-discriminatory reasons to allow a reasonable factfinder to determine that the defendant's proffered "legitimate reasons were not what actually motivated its conduct." *Silvera v Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quotation omitted). Additionally, "a reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original, quotation marks omitted). To establish pretext, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*,

405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted). Close temporal proximity between the protected conduct and the adverse employment action "can establish pretext when coupled with other evidence," but "temporal proximity alone is insufficient." *Tanner v. Stryker Corp. of Michigan*, 104 F.4th 1278, 1290 (11th Cir. 2024) (quotation omitted).

However, we have cautioned that establishing the elements of the *McDonnell Douglas* framework "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, "*McDonnell Douglas* is only one method by which the plaintiff can prove discrimination by circumstantial evidence," and "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Tynes*, 88 F.4th at 946 (quotation marks omitted). A plaintiff may defeat a summary judgment motion by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328 (quotation and footnote omitted). A plaintiff may establish a "convincing mosaic" by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent might be inferred, (2) "systematically better treatment of similarly situated employees," and (3) "the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019). A "convincing mosaic" is "a metaphor, not

a legal test and not a framework," for the summary judgment standard. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). If circumstantial evidence of any form "raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Smith*, 644 F.3d at 1328.

Wilson argues that she has made a *prima facie* showing of race discrimination because Christman and Strachan are similarly situated, white employees who were favored over her. She argues that Christman is a valid comparator because neither Christman nor Wilson was working as a crew operations supervisor prior to November 19. Wilson asserts that during her absence, Christman was still in training and DeAlexandris did not provide an actual start date for him. So when she returned on November 19, Wilson argues that she was able to resume work as a crew operations supervisor and Christman was not. Yet CSX still did not offer Wilson her old position back. And Strachan is also a valid comparator, Wilson asserts, because the two are "similarly situated in all aspects of employment"—both reported to DeAlexandris, shared same or similar responsibilities, and were subject to the same CSX policies, procedures, and benefits. Yet DeAlexandris allowed Strachan to take extended leave in November and December 2018 and did not find his absence to be disruptive. Wilson also points to DeAlexandris's emails as evidence of racial bias, stating that both her negative remarks about Wilson and the lack of any remarks about Strachan showed an implied bias against Wilson.

We conclude, however, that a review of the record evidence does not support Wilson's argument that she has made a *prima facie* showing of race discrimination.  Indeed, Wilson has failed to show that either of her comparators were similarly situated to her.  With Christman's hiring, CSX posted an application for Wilson's position after she was unable to meet her scheduled return on October 1 and did not provide a timetable for her return.  At that point, Wilson did not have a job or a right to reinstatement because she exhausted her FMLA leave.  CSX then offered the position to Christman on November 5, and he started work as a crew operations supervisor on November 9.  Wilson returned to work on November 19.  Christman is thus not similarly situated to Wilson because he was available to work prior to her return.

Next, Strachan is also not a valid comparator because he was employed in a different role.  Strachan also took 8 weeks leave to Wilson's 23 weeks.  While Wilson argues that Strachan received more favorable treatment by being allowed to work remotely, she does not provide any evidence that her job could be done remotely and never requested to work remotely.

But even assuming a *prima facie* showing of race discrimination, Wilson's claim here fails for the same reasons as her FMLA retaliation claim: no evidence refutes CSX's legitimate, non-discriminatory reason for filling her position.  As Wilson testified, her role is critical to the functioning of CSX and needs to be staffed around the clock.  DeAlexandris's emails are evidence of the disruptive nature of Wilson's absences, not of any racial bias.  Nor

does the record support a reasonable inference of discriminatory intent—Wilson has not pointed to any statements or communications by CSX reflecting a racial bias against her and she testified that Lovelady, DeAlexandris, and Sieruga never made any racial comments towards her.

We thus conclude that the district court did not err in granting summary judgment to CSX on Wilson's race discrimination claims, as Wilson has not made a *prima facie* case, shown that CSX's proffered reasons for filling her position were pretext for racial discrimination, or presented any circumstantial evidence raising a genuine issue of discriminatory intent. *See Tynes*, 88 F.4th at 944, 946.

## VI.

Lastly, we address the recusal issues raised by Wilson. Recusal is governed by two federal statutes, 28 U.S.C. §§ 144 and 455. *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004). Under the former, a judge must recuse himself when a party to a district court proceeding files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against her or in favor of any adverse party. 28 U.S.C. § 144.

Under 28 U.S.C. § 455(a), a judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Thus, the test is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a

significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (quotation omitted).  Section 455(b) lists the several circumstances for when a judge should recuse himself, including "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b).  Under § 455(b), "a judge should recuse . . . under § 455(b) when any of the specific circumstances set forth in that subsection exist, which show the fact of partiality," and finding that one of the circumstances exists requires recusal.  *Patti*, 337 F.3d at 1321–22.  Bias "must stem from extrajudicial sources and must be focused against a party to the proceeding."  *United States v. Ramos*, 933 F.2d 968, 973 (11th Cir. 1991) (quotation omitted).

Wilson has failed to show that Judge Barksdale plainly erred in declining to recuse herself.  First, Wilson only moved for Judge Barksdale to recuse herself after judgment had been entered for CSX, and the denial of that motion is not before us.  Second, Wilson has not shown that Judge Barksdale should have *sua sponte* recused herself from the case.  Judge Barksdale only issued non-dispositive orders, and there is no evidence of bias or miscarriage of justice.  And a relationship between Judge Barksdale and CSX that ended two decades ago is too remote to suggest any partiality. *See Jenkins*, 922 F.3d at 1272 (holding that an objective, disinterested layperson would likely not question a district court's partiality based on "something so remote" as a representation that occurred 26 years ago).

Similarly, Wilson has failed to show a miscarriage of justice from Judge Adams's failure to recuse himself sooner in the case. Judge Adams also only issued non-dispositive orders and had recused himself by the time Judge Corrigan ruled on the merits of CSX's motion for summary judgment.

We thus conclude that Wilson has not shown that either Magistrate Judge Barksdale plainly erred by declining to recuse herself or that Judge Adams plainly erred by failing to recuse himself at an earlier date.

**AFFIRMED.**[1]

---

[1] Since we affirm the district court's decision granting summary judgment for CSX, we need not consider CSX's judicial estoppel arguments.